## STATE OF CONNECTICUT *v.* TROY GARDNER
(AC 24019)

Foti, Bishop and McLachlan, Js.

Argued September 10—officially released November 2, 2004

*Jonathan K. Gable*, special public defender, for the appellant (defendant).

*Jessica Probolus*, special deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Robert J. O'Brien*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

McLACHLAN, J. The defendant, Troy Gardner, appeals from the judgment of conviction, rendered after a jury trial, of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4). On appeal, the defendant claims that the trial court improperly (1) denied his motion to suppress eyewitness identifications and (2) denied his motion for a mistrial due to prosecutorial misconduct. We affirm the judgment of the trial court.[1]

---

[1] Although the defendant stated on his appeal form that he is appealing from the court's "finding of violation of probation," he raises no claim in this court as to that judgment, and we therefore dismiss that portion of his appeal.

The jury reasonably could have found the following facts. On the evening of January 29, 2002, Ramon Sanchez, the owner of the Orchard Variety Deli in New Haven, was robbed at gunpoint by two men while he was working behind the counter in his store. One man wore a ski mask, and the other, later identified as the defendant, wore a hooded sweatshirt that left his face uncovered. The defendant pointed the gun at Sanchez and demanded the money from the cash register. The masked man then emptied the register of its contents. During the robbery, Jerry Smart, who lived in an apartment above the store, entered. The defendant pointed the gun at Smart and ordered him not to move. Thereafter, the men left the store, and Smart observed them fleeing on foot. Less than one hour later, police found and detained the defendant when a neighbor pointed out the house she had seen the suspects enter after fleeing the store.[2] The police asked Sanchez and Smart to identify the defendant, and each agreed to participate in a one-on-one show-up identification procedure. The jury convicted the defendant, in part, on the strength of those eyewitness identifications. The two identifications had the following facts in common. The police placed the witness in a squad car and drove a few blocks to where the defendant was detained. Each witness stepped out of the car, and the police brought the defendant out of another squad car. Police officers stood on either side of the defendant, shined a light on his face and asked the witness whether the defendant was the man who had not worn a mask during the robbery.

I

The defendant first claims that the court improperly denied his motion to suppress the identifications made at the one-on-one show-ups by Smart and Sanchez

---

[2] The police never apprehended the masked robber, who apparently left the house before the police arrived.

because they were unnecessarily suggestive and unreliable. Because we agree with the court that the defendant waived his claim with respect to the Smart identification and that the Sanchez identification was not unnecessarily suggestive, we reject the claim. We address each identification in turn.

## A

When the police shined the light on the defendant, Smart immediately and without any doubt identified the defendant as the man who had not worn a mask when robbing the store and pointing a gun at him. Although the defendant included the Smart identification in his motion to suppress, he later conceded its reliability at a hearing on that motion.[3] The court did not make any findings as to the suggestiveness of the identification procedure because of that concession.

We are likewise bound by the defendant's concession. Common sense dictates that when a defendant concedes the admissibility of evidence against him and later claims that admission of the evidence constituted error, we do not consider the merits of the claim. *State v. Fisher*, 57 Conn. App. 371, 376, 748 A.2d 377, cert. denied, 253 Conn. 914, 754 A.2d 163 (2000); *State v. Maisonet*, 16 Conn. App. 89, 97, 546 A.2d 951, cert. denied, 209 Conn. 816, 550 A.2d 1086 (1988), cert. denied, 489 U.S. 1014, 109 S. Ct. 1127, 103 L. Ed. 2d 189 (1989). A defendant who concedes the admissibility of evidence "cannot be allowed later to complain that those concessions have rendered his trial unfair." *State v. Cruz*, 75 Conn. App. 500, 511, 816 A.2d 683 (2003), aff'd, 269 Conn. 97, 848 A.2d 445 (2004).

---

[3] At the hearing on the motion to suppress, the court asked defense counsel in relevant part, "Are you conceding that, based on the testimony here, that . . . his identification is reliable under all of the circumstances?" Defense counsel responded, "I would concede the reliability in regard to Mr. Smart."

The defendant also cannot avoid the consequences of his concession by seeking review under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). "In the usual *Golding* situation, the defendant raises a claim on appeal which, while not preserved at trial, at least was not waived at trial." *State* v. *Cooper*, 38 Conn. App. 661, 667, 664 A.2d 773, cert. denied, 235 Conn. 908, 665 A.2d 903 (1995), cert. denied, 517 U.S. 1214, 116 S. Ct. 1837, 134 L. Ed. 2d 940 (1996). *Golding* review is inappropriate here because a defendant who challenges the admission of evidence admitted on his concession necessarily fails to satisfy the third prong of the four-pronged *Golding* analysis, i.e., that "the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial . . . ." *State* v. *Golding*, supra, 240. There can be no constitutional violation when the defendant waives his right to challenge the evidence against him. See *State* v. *Wyatt*, 80 Conn. App. 703, 708, 710, 836 A.2d 1242 (2003), cert. denied, 267 Conn. 918, 841 A.2d 1192 (2004). We therefore conclude that the court properly admitted the Smart identification into evidence.

B

Unlike Smart, Sanchez initially had difficulty identifying the defendant as one of the robbers. Sanchez told police that he thought the defendant was the man who was not wearing a mask during the robbery, but that he could not be 100 percent sure. He later testified at the suppression hearing that his uncertainty was due to the fact that the defendant was moving his face during the viewing and was wearing different clothing than he wore during the robbery. Furthermore, Sanchez testified that he was shaken up and nervous following the robbery.

Later that night at the police station, however, Sanchez told police that the man he viewed at the showup was indeed the person who had robbed his store

earlier that night. He recognized the defendant from the neighborhood and noticed his distinctive light brown eyes and braided hair. The court concluded that despite the passage of time between the viewing and the identification, Sanchez did make a positive identification of the defendant. The defendant challenges the constitutionality of the identification.

In determining whether identification procedures violate a defendant's due process rights, "[t]he required inquiry is made on an ad hoc basis and is two-pronged: first, it must be determined whether the identification procedure was unnecessarily suggestive; and second, if it is found to have been so, it must be determined whether the identification was nevertheless reliable based on an examination of the totality of the circumstances. . . . To prevail on his claim, the defendant has the burden of showing that the trial court's determinations of suggestiveness and reliability both were incorrect. . . . An identification procedure is unnecessarily suggestive only if it gives rise to a very substantial likelihood of irreparable misidentification." (Internal quotation marks omitted.) *State* v. *Cook*, 262 Conn. 825, 832, 817 A.2d 670 (2003). We conclude that the identification procedure was not unnecessarily suggestive and, therefore, do not address its reliability.

"A one-on-one show-up does place upon the identification process an inherent level of suggestiveness and susceptibility to misidentification. . . . Show-ups, however, and procedures like them tend under some circumstances to ensure accurate identifications and the benefit of promptness not only aids reliability but permits a quick release of an innocent party if there is no positive identification, allowing the police to resume the investigation with only a minimum of delay." (Citation omitted; internal quotation marks omitted.) *State* v. *Mills*, 57 Conn. App. 356, 361, 748 A.2d 891 (2000).

The facts of this case present a circumstance in which show-up identifications were appropriate. The Sanchez show-up occurred less than one hour after the robbery so that the witness' memories presumably were fresh. Furthermore, the police believed the suspects could not have gotten far because a neighbor told police that the suspects had entered a particular residence on foot. Even if Sanchez had not identified the defendant as the robber who had not worn a mask, the actual robbers were still likely to be in the immediate area. In *State* v. *Mills*, supra, 57 Conn. App. 361, we determined that a show-up under almost identical circumstances was not unnecessarily suggestive. There, as here, the show-up involved the defendant standing between police officers and being illuminated by lights. We held that "[t]his scenario does retain an element of suggestiveness, but is not in itself so unduly suggestive such that it was improper." Id.; see also *State* v. *Wooten*, 227 Conn. 677, 686, 631 A.2d 271 (1993) (confrontation between victim and suspect seated in back of police car suggestive, but not unnecessarily so).

The fact that Sanchez did not immediately identify the defendant at the show-up but only did so later is a fact that supports the conclusion that the procedure was not unnecessarily suggestive. If the procedure had been so, the witness would have been more likely to make an immediate identification. Accordingly, we cannot conclude that either show-up identification procedure violated the defendant's due process right to a fair trial.

## II

The defendant next claims that the court improperly denied his motion for a mistrial due to prosecutorial misconduct. We disagree.

The defendant points out a single remark made during the prosecutor's rebuttal closing argument to the jury as

evidence of prosecutorial misconduct. The prosecutor spoke of a defense witness, Christopher Coy, and stated: "We know from Mr. Coy's testimony, some of which I find totally unbelievable, and that's up to you to decide how credible he was . . . ." The court denied the defendant's motion for a mistrial and gave a general curative instruction to the jury on its exclusive role in determining the credibility of witnesses and a specific curative instruction addressing the remarks by the attorneys concerning witness credibility.

"The standard for review of an action upon a motion for a mistrial is well established. While the remedy of a mistrial is permitted under the rules of practice, it is not favored. [A] mistrial should be granted only as a result of some occurrence upon the trial of such a character that it is apparent to the court that because of it a party cannot have a fair trial . . . and the whole proceedings are vitiated. . . . If curative action can obviate the prejudice, the drastic remedy of a mistrial should be avoided. . . . On appeal, we hesitate to disturb a decision not to declare a mistrial. The trial judge is the arbiter of the many circumstances which may arise during the trial in which his function is to assure a fair and just outcome. . . . The trial court is better positioned than we are to evaluate in the first instance whether a certain occurrence is prejudicial to the defendant and, if so, what remedy is necessary to cure that prejudice. . . . The decision whether to grant a mistrial is within the sound discretion of the trial court." (Citations omitted; internal quotation marks omitted.) *State* v. *Taft*, 258 Conn. 412, 418, 781 A.2d 302 (2001).

In applying the abuse of discretion standard to a claim of prosecutorial misconduct, we engage in a two step analysis. We ask whether prosecutorial misconduct has occurred and, if so, whether that misconduct deprived the defendant of his due process right to a fair trial. See *State* v. *Coney*, 266 Conn. 787, 808, 835 A.2d

977 (2003). There is no question that the prosecutor's remark was improper in that he expressed a personal opinion about the credibility of a witness. Although the defendant's appellate counsel argues valiantly that this single remark tainted the defendant's alibi defense, this is not a close case. Applying the factors enumerated in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987), it is clear that this isolated remark did not cause the defendant substantial prejudice. The comment was isolated, and the prosecutor immediately corrected himself. The court gave more than sufficient curative instructions, and the state's case against the defendant was sufficiently strong. We cannot conclude that this comment deprived the defendant of a fair trial.

The judgment is affirmed.

In this opinion the other judges concurred.