STATE OF CONNECTICUT *v.* LORENZO GRANT
(AC 24303)

Lavery, C. J., and Bishop and Hennessy, Js.

Argued October 21, 2004—officially released June 14, 2005

*Carlos E. Candal*, special assistant public defender, for the appellant (defendant).

*Elizabeth M. Moseley*, special deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *John F. Fahey*, assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. Appealing from his conviction of assault in the second degree in violation of General Statutes § 53a-60, the defendant, Lorenzo Grant, claims that the trial court violated his constitutional right to confrontation by restricting his cross-examination of the victim,

Kareem Collins, regarding the victim's drug possession at the time of the assault, and that the court's evidentiary rulings during cross-examination of the victim, if not constitutionally improper, were an abuse of discretion. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our discussion of the issues on appeal. Collins was admitted to a hospital with severe stab wounds on June 8, 2001. During the course of an examination of Collins at the hospital, medical staff discovered a plastic bag containing a "white rock like substance," which was crack cocaine, in his rectum.[1] After Collins identified the defendant as his assailant, the defendant was arrested and charged with assault in the first degree.

On March 26, 2003, the state filed a motion in limine to preclude the defendant from questioning Collins about the narcotics found on his person in the hospital. After a hearing on the motion on April 1, 2003, the court reserved its decision but ordered the defendant not to ask any questions regarding the issue in the presence of the jury pending resolution of the motion. During the cross-examination of Collins on April 8, 2003, the defendant made an offer of proof in the jury's absence in an effort to lay a factual foundation for the admissibility of evidence regarding Collins' possession of narcotics when the assault occurred. Specifically, the defendant asked him if he had used drugs or was intoxicated at the time of the incident. After Collins answered each of these questions in the negative, the defendant then asked Collins whether he had been in possession of drugs at the time. The state's objection to this question was sustained on the ground that evidence of bad acts is proscribed by Connecticut Code of Evidence § 6-6 (b). The prosecutor and the defendant agreed to

---

[1] Although the record reflects the substance was never tested, there is no dispute that the "white rock like substance" was crack cocaine.

the undisputed facts that after drugs were found on Collins' person at the hospital, they were seized and later inventoried in the Hartford police department property room, that there was no criminal investigation concerning the drugs seized from Collins, that he was then on probation as a result of a previous conviction for selling narcotics and was serving a suspended sentence under which he owed three years and three months, and that despite his criminal record and the evidence against him, Collins was not criminally charged for this instance of drug possession. Defense counsel and the prosecutor also agreed that at the hospital, a detective inventoried the drugs seized from Collins, among other items, and turned them over to the Hartford police property room. Luisa St. Pierre, the detective who was investigating the assault of Collins, did not mention the narcotics to him and never threatened to bring the possession to the attention of his probation officers. A report regarding the seized property was placed in the prosecutor's case file and turned over to the defendant before trial.

In light of this factual underlayment, the defendant argued that the evidence of the seized crack cocaine should be admitted into evidence on the basis of his right to confrontation and to impeach Collins' earlier testimony that he was not under the influence of drugs or at the scene to buy or sell drugs. After the court sustained the objection as to this foundation, the defendant argued, alternatively, that evidence that Collins was in possession of narcotics and was not criminally charged, even though he was then on probation for drug possession, could reasonably lead the jury to discredit Collins' identification of the defendant as his attacker. The defendant reasoned that the proffered evidence of drug possession and lack of prosecution provided evidentiary support for an inference that by his testimony inculpating the defendant, Collins was simply

currying favor with the state in order to avoid prosecution. The court sustained the state's objection and precluded the defendant from questioning Collins regarding his drug possession. The defendant was, however, able to ask Collins in the jury's presence whether he had been under the influence of drugs at the time of the incident and whether he had been at that particular location for the purpose of buying or selling drugs. Collins answered the questions in the negative.

On appeal, the defendant claims the court's rulings in this regard denied him the right of confrontation guaranteed under the United States constitution and the constitution of Connecticut or, in the alternative, that the court abused its discretion by precluding him from assailing Collins' credibility. "We traditionally apply a two part analysis to determine whether a party has been deprived of effective cross-examination. First, we determine whether the defendant received the minimum opportunity for cross-examination of adverse witnesses required by the constitution. . . . If so, we then consider whether the trial court's restriction of cross-examination amounted to an abuse of discretion under the rules of evidence." (Internal quotation marks omitted.) *State* v. *Henry*, 72 Conn. App. 640, 666, 805 A.2d 823, cert. denied, 262 Conn. 917, 811 A.2d 1293 (2002).

I

We first look to whether the court's preclusion of the evidence constituted a violation of the defendant's constitutional right to confrontation. Generally, under the constitutional right to confrontation, a defendant is allowed broad latitude to test the veracity and credibility of the witnesses testifying against him. See *State* v. *Barnes*, 232 Conn. 740, 746, 657 A.2d 611 (1995). "The confrontation clause does not, however, suspend the rules of evidence to give the defendant the right to engage in unrestricted cross-examination." (Internal

quotation marks omitted.) *State* v. *Kelley*, 229 Conn. 557, 562, 643 A.2d 854 (1994). "In order to comport with the constitutional standards embodied in the confrontation clause, the trial court must allow a defendant to expose to the jury facts from which the jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. . . . Only relevant evidence may be elicited through cross-examination. . . . The court determines whether the evidence sought on cross-examination is relevant by determining whether that evidence renders the existence of [other facts] either certain or more probable." (Citations omitted; internal quotation marks omitted.) *State* v. *Barnes*, supra, 746.

"The proffering party bears the burden of establishing the relevance of the offered testimony. Unless such a proper foundation is established, the evidence . . . is irrelevant. . . . This may be accomplished in one of three ways. First, the defendant can make an offer of proof. . . . Second, the record independently can be adequate to establish the relevance of the proffered testimony. . . . Finally, the defendant can establish a proper foundation for the testimony by stating a good faith belief that there is an adequate factual basis for his inquiry. A good faith basis on the part of examining counsel as to the truth of the matter contained in questions propounded to a witness on cross-examination is required. . . . A cross-examiner may inquire into the motivation of a witness if he or she has a good faith belief that a factual predicate for the question exists." (Internal quotation marks omitted.) *State* v. *Henry*, supra, 72 Conn. App. 665–66.

"In determining whether a defendant's right of cross-examination has been unduly restricted, we consider the nature of the excluded inquiry, whether the field of inquiry was adequately covered by other questions that were allowed, and the overall quality of the cross-

examination viewed in relation to the issues actually litigated at trial." (Internal quotation marks omitted.) *State* v. *Cooke*, 42 Conn. App. 790, 794, 682 A.2d 513 (1996). We examine the defendant's claims under this framework.

### A

The defendant first claims that the court's ruling was constitutionally improper because Collins' possession of drugs logically would lead the jury to infer that he was using drugs and, therefore, that he had a compromised sense of perception and ability to recall events.

At the outset, we note that the defendant has a constitutional right to examine the witness on issues that may affect his reliability as a witness, including his sense of perception and ability to recall events. *State* v. *Valentine*, 255 Conn. 61, 70–71, 762 A.2d 1278 (2000); *State* v. *Cardinal*, 194 Conn. 114, 119, 478 A.2d 610 (1984). In the presence of the jury, the defendant questioned Collins regarding whether he was under the influence of drugs at the time of the incident, and Collins answered that he was sober. The court precluded questions regarding whether Collins was in possession of drugs at the time of the incident. The defendant argues that the restriction prevented him from introducing evidence that Collins was impaired by drugs at the time of the incident and, therefore, was an unreliable witness. We disagree.

A fair reading of the record reveals that the court precluded testimony concerning Collins' possession of drugs on the ground that the defendant was merely seeking to elicit evidence of a bad act. Our Supreme Court has set forth standards for determining the extent of cross-examination concerning specific acts of prior misconduct. "[T]he right to cross-examine a witness pertaining to specific acts of misconduct is limited in three distinct ways. . . . First, cross-examination may

only extend to specific acts of misconduct other than a felony conviction if those acts bear a special significance upon the issue of veracity . . . . Second, [w]hether to permit cross-examination as to particular acts of misconduct . . . lies largely within the discretion of the trial court. . . . Third, extrinsic evidence of such acts is inadmissible." (Citation omitted; internal quotation marks omitted.) *State* v. *Valentine*, supra, 255 Conn. 71; see also Conn. Code Evid. § 6-6 (b), commentary.

To the extent that the evidence was suggestive of a bad act only, we agree with the court. The sweep of the offer, however, was broader. The defendant initially made the proffer on the ground that proof of possession by Collins could be tied to his ability to perceive. Although we are aware of decisional law holding that when there is evidence of a witness' drug use near the time of the incident at issue, counsel is permitted to introduce the drug use to establish the witness' compromised sense of perception; see, e.g., *State* v. *Clark*, 260 Conn. 813, 820, 801 A.2d 718 (2002); we are unaware of any case law that provides that evidence of possession, without any evidence of use, nevertheless may be introduced in support of a claim that a witness has a compromised sense of perception. Once Collins denied being intoxicated, the defendant was foreclosed from introducing extrinsic evidence to prove an altered sense of perception because such evidence, while tending to prove the occurrence of a "bad act," would not have been otherwise probative of Collins' ability to perceive the events about which he testified. See *State* v. *Chance*, 236 Conn. 31, 61, 671 A.2d 323 (1996); C. McCormick, Evidence (3d Ed. 1984) § 42.

B

The defendant also argues that by precluding him from asking Collins about possession of crack cocaine,

the court denied him the opportunity to impeach Collins' testimony that the defendant had not been high on drugs at the time of the incident and that he was not at the scene to buy or sell drugs.

The defendant claims that the evidence of Collins' drug possession reflects on his veracity because it impeaches his earlier testimony that, at the time of the incident, he was not under the influence of drugs and was not at the scene to buy or sell drugs. "A witness may be impeached by evidence of specific acts of misconduct that relate to veracity, but not by those that merely illustrate general bad behavior." (Internal quotation marks omitted.) *State* v. *Lambert*, 58 Conn. App. 349, 356, 754 A.2d 182, cert. denied, 254 Conn. 915, 759 A.2d 507 (2000). In order for specific instances of conduct to be admissible for impeachment purposes, the jury must be able to draw an appropriate inference that the conduct actually counters the witness' prior testimony. See, e.g., *State* v. *Bova*, 240 Conn. 210, 227, 690 A.2d 1370 (1997); *State* v. *Aaron L.*, 79 Conn. App. 397, 425, 830 A.2d 776 (denying constitutional right of confrontation claim because evidence offered for impeachment was collateral to issue of veracity), cert. granted on other grounds, 266 Conn. 924, 835 A.2d 474 (2003). "[W]e have expressly upheld a trial court's ruling that evidence of drug dealing is not relevant to veracity . . . ." (Citation omitted.) *State* v. *Lambert*, supra, 357.

In precluding the defendant's questions regarding drug possession, the court ruled that the mere possession of drugs does not impeach previous testimony that Collins was not under the influence of drugs.[2] We must

---

[2] The following colloquy took place:

"The Court: So, if he had a—if he had a bottle of alcohol, a sealed bottle of alcohol in his pocket, and he says, no I wasn't drunk, are you entitled to ask him if he had a—didn't you have a half pint of X, Y, Z alcohol in your pocket?

"[Defense Counsel]: I would say it does.

determine whether the defendant was deprived of a constitutional right to confrontation by considering "the nature of the excluded inquiry, whether the field of inquiry was adequately covered by other questions that were allowed, and the overall quality of the cross-examination viewed in relation to the issues actually litigated at trial." (Internal quotation marks omitted.) *State* v. *Cooke*, supra, 42 Conn. App. 794. Although the defendant was precluded from questioning Collins about his possession of drugs, the defendant was allowed to question Collins regarding whether he had been using drugs and whether he was buying or selling drugs at the time of the incident. The defendant was also able to question Collins about his prior conviction for selling narcotics. We conclude that this examination provided the defendant with a minimum opportunity to attack Collins' credibility by questioning him about his drug related activities and, therefore, the court's preclusion of Collins' testimony was not an error of constitutional dimension.

C

The defendant further claims that he should have been able to question Collins regarding his possession of crack cocaine in order to demonstrate that he had a motive to testify favorably for the prosecution. The defendant argues that he was precluded from raising the inference that Collins was testifying in exchange for favorable treatment by the state in light of his evident criminal possession of crack cocaine, his criminal record and his probationary status.

"The Court: I would say it doesn't. And so I don't—I can't distinguish those two. So—these are bad act questions, essentially. Were you intoxicated? Were you—were you selling drugs? Were you ingesting drugs? Those are bad act questions, which you have to have a good faith basis to ask. And—in which you're bound to the answer of the—the witness. So, I'll sustain the objection to were you in possession of drugs."

The defendant argued to the court that because the office of adult probation had imputed notice[3] of Collins' possession of the drugs, the failure of Collins' probation officer to charge him with a violation of probation constituted favorable treatment by the state, and this favorable treatment gave him an incentive to testify for the state. The defendant admitted, however, that there was no factual basis to support his hypothesis that neither the police, the prosecutor nor the probation office had threatened Collins with arrest if he did not testify favorably or that Collins believed he was in any jeopardy of prosecution if he did not testify on behalf of the state. The defendant also agreed that there was no evidence to support an inference that the state had deferred prosecution against Collins in exchange for his cooperation as a state's witness.

Although we recognize the significance of a defendant's right to cross-examine a witness on his motive for testifying, the range of questions available to a defendant is not limitless. "The primary interest secured by confrontation is the right to cross-examination . . . and an important function of cross-examination is the exposure of a witness' motivation in testifying. . . . Cross-examination to elicit facts tending to show motive, interest, bias and prejudice is a matter of right and may not be unduly restricted." (Citations omitted; internal quotation marks omitted.) *State* v. *Colton*, 227 Conn. 231, 249, 630 A.2d 577 (1993), on appeal after remand, 234 Conn. 683, 663 A.2d 339 (1995), cert. denied, 516 U.S. 1140, 116 S. Ct. 972, 133 L. Ed. 2d 892 (1996). "It bears emphasis that any limitation on the impeachment of a key government witness is subject to the most rigorous appellate review." Id., 250.

---

[3] The defendant argued: "So, the police have notice of [Collins' possession], by extension, the state has notice, and because probation is part of the state, is under the arm of the state, they have notice."

As noted, the court allowed the defendant to inquire into whether Collins was using drugs or was high at the time of the incident and only restricted questioning regarding Collins' possession of drugs in the hospital. After the state and the defendant had set forth the undisputed facts regarding the discovery of crack cocaine on Collins' person at the hospital, Collins' criminal record and probationary status, the awareness of the police of the seizure of cocaine from Collins, and the presence of an inventory of seized items in the police file and the lack of prosecution of Collins, the court engaged in a weighing task in assessing whether to permit this evidence for impeachment purposes. The court stated: "What I'm trying to avoid . . . is the possibility of a minitrial about the police procedures and what happens to seized property and how—how it came to pass that no—no action was taken against Mr. Collins because of this substance . . . ." The record reflects that the court carefully weighed the admission of this evidence against the likelihood that its admission would cause the trial to detour into a fruitless exposition of police procedures.

The defendant was given a minimum opportunity to cross-examine Collins regarding his reliability on areas that were supported by the evidence, such as his drug use at the time of the incident. "The constitutional standard is met when defense counsel is permitted to expose to the jury the facts from which [the] jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. *Davis* v. *Alaska*, [415 U.S. 308, 318, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974)] . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Gaynor*, 182 Conn. 501, 509, 438 A.2d 749 (1980). Here, precluding questions regarding Collins' drug possession did not violate the defendant's right to confrontation because the inferences to be drawn regarding Collins' alleged

motives were not supported sufficiently by evidence. During the offer of proof, the defendant never asked Collins whether he had any express or implied agreement with the state, thereby drawing any connection between Collins' testimony and the failure of the police to pursue his evident criminal conduct. Indeed, the defendant did not provide any evidence establishing that the failure of the police to follow-up on the drug possession was anything other than mere oversight or ineptness. Finally, the defendant did not establish that the probation office had actual knowledge that Collins had been discovered to be in possession of crack cocaine.

Because the defendant was unable to establish any link between the victim's testimony and the failure of the state to prosecute him for drug possession, the defendant's inferences regarding Collins' purported motives rested purely on speculation. "Evidence is irrelevant or too remote if there is such a want of open and visible connection between the evidentiary and principal facts that, all things considered, the former is not worthy or safe to be admitted in the proof of the latter." (Internal quotation marks omitted.) *State* v. *Bova,* supra, 240 Conn. 226. "[I]t is entirely proper for a court to deny a request to present certain testimony that will further nothing more than a fishing expedition . . . or result in a wild goose chase." (Citation omitted; internal quotation marks omitted.) *State* v. *Barnes,* supra, 232 Conn. 749–50. The defendant did not establish a nexus between the state's failure to act and Collins' testimony, and, therefore, the court's preclusion of the cross-examination regarding Collins' possession of crack cocaine did not deny the defendant his constitutional right to confrontation.

## II

The defendant finally claims that even if the court's preclusion of the evidence did not amount to a constitu-

tional violation, restricting the cross-examination constituted an abuse of discretion. In assessing whether the preclusion of evidence constitutes an abuse of discretion, our decisional law instructs us that "[t]he trial court has wide discretion to determine the relevancy of evidence and the scope of cross-examination. Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion. . . . Furthermore, [t]o establish an abuse of discretion, [the defendant] must show that the restrictions imposed upon [the] cross-examination were clearly prejudicial." (Citation omitted; internal quotation marks omitted.) *State* v. *Bova*, supra, 240 Conn. 219–20. "[T]he burden to prove the harmfulness of an improper evidentiary ruling is borne by the defendant . . . [who] must show that it is more probable than not that the erroneous action of the court affected the result." (Internal quotation marks omitted.) *State* v. *Stavrakis*, 88 Conn. App. 371, 374, 869 A.2d 686 (2005).

With regard to the defendant's first and third claims that Collins' testimony regarding his possession of crack cocaine should have been admissible to prove an altered sense of perception and motivation for testifying, we hold that the court did not abuse its discretion. As noted, the mere possession of a controlled substance does not constitute an adequate basis for a fact finder to conclude that one's perception has been altered. As to Collins' motive for testifying, we believe the court reasonably weighed the proffer of the evidence for this purpose against the prejudicial impact of its admission.

We agree, however, with the defendant's claim regarding credibility that the court abused its discretion in precluding the evidence regarding Collins' possession of drugs. The proffered evidence could have been used to attack Collins' credibility because the testimony about his possession would tend to erode the truthful-

ness of the testimony that he had not recently used drugs or that he was not at the scene to buy or sell drugs.

In light of our conclusion that the court abused its discretion in this regard, we must examine whether the defendant has proven that the preclusion was harmful. The following additional facts are relevant to this discussion. At trial, Kerry Fair testified that he was with Collins on the day of the incident when the defendant approached the vehicle in which Collins was sitting. Fair testified that Collins "got out of the car, punches were thrown, he jumped back in the car and went to the hospital." When asked if Collins had said anything when reentering the car, Fair testified, "I think he said he stabbed me or something." Fair, who had known the defendant for half of his life, was able to identify him as the person who had approached the vehicle, fought with Collins and stabbed him. On the basis of this testimony combined with the objective evidence of the injuries sustained by Collins, we are persuaded that the preclusion of evidence tending to challenge Collins' credibility was harmless.

The judgment is affirmed.

In this opinion the other judges concurred.