## STATE OF CONNECTICUT *v.* BRUCE M. FELDER
(AC 26348)

Schaller, DiPentima and Lavine, Js.

Argued September 19, 2006—officially released January 2, 2007

*Auden Grogins*, special public defender, for the appellant (defendant).

*Sarah Hanna*, special deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Thomas R. Garcia*, assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Bruce M. Felder, appeals from the judgment of conviction, rendered after a jury trial, of robbery in the first degree in violation

of General Statutes § 53a-134 (a) (4)[1] and larceny in the third degree in violation of General Statutes § 53a-124 (a) (2).[2] On appeal, the defendant claims that (1) the evidence adduced at trial was insufficient to establish his identity as the perpetrator beyond a reasonable doubt, (2) the trial court improperly denied his motion to suppress an identification of him in violation of his due process rights and (3) the court improperly limited cross-examination of the state's key witness in violation of his sixth amendment right to confrontation. We affirm the judgment of the trial court.

On the basis of the evidence presented at trial, the jury reasonably could have made the following findings of fact. On August 14, 2002, the Sovereign Bank in West Hartford was robbed of $1655. Shortly after 9 a.m., an individual entered the bank and waited in the teller line. Carol Hyland, a personal banking representative, noticed the individual waiting in line and offered to assist him. The individual approached her desk and placed down a note stating that he had a gun and demanding that she give him her money.[3] Hyland immediately grabbed her coin tray and slammed it on her desk in order to attract attention. At that point, the branch manager, Carol Wilson, took notice. As the individual took the money and exited the bank, Wilson followed closely behind and observed him drive away in a gray Ford Explorer. Neither Hyland nor Wilson

---

[1] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . ."

[2] General Statutes § 53a-124 (a) provides in relevant part: "A person is guilty of larceny in the third degree when he commits a larceny, as defined in section 53a-119, and . . . (2) the value of the property or service exceeds one thousand dollars . . . ."

[3] Hyland testified that the note stated, "I have a gun, give me your money," or words to that effect.

were able to identify the perpetrator positively. At trial, Hyland described the perpetrator as a dark skinned male about five feet, ten inches tall, very muscular, weighing between 200 and 220 pounds, wearing a tank top and a stocking cap with his face visible. Wilson described the perpetrator as a black male wearing a sleeveless shirt and a "do-rag."

At the time of the robbery, the defendant had been involved in a romantic relationship with Michelle Mills, and the two had lived together. On August 13, 2004, the defendant took Mills' vehicle, a gray Ford Explorer, without permission and did not return it until approximately noon the following day. When the vehicle was returned, Mills found inside it a white pillowcase, a $20 bill and a note stating, "I have a big gun, give me your money." She also observed the defendant inside the house counting money. When she confronted the defendant, he gave her $200 and told her to "mind her own business."

On August 25, 2002, the police seized Mills' vehicle, which was later identified by Wilson as the vehicle she observed fleeing the robbery. On August 27, 2002, Mills went to the police station and viewed photographs taken from the bank surveillance videotape.[4] In her statement to the police, Mills indicated that she recognized the defendant as the perpetrator on the basis of his head covering and sneakers and provided his name. At trial, Mills testified that her recognition also was based on the defendant's nose and posture.

The defendant was charged with robbery in the first degree and larceny in the third degree. The jury found the defendant guilty of both charges. The court imposed

[4] The photographs from the bank surveillance videotape were admitted into evidence. In addition, a booking photograph of the defendant and a photographic array containing his photograph were also entered into evidence.

a total effective sentence of twenty years incarceration. This appeal followed. Additional facts will be set forth where necessary.

I

The defendant first claims that the evidence adduced at trial was insufficient to establish his identity as the perpetrator beyond a reasonable doubt. We disagree.

As a threshold matter, we set forth the standard of review employed in a sufficiency of the evidence claim. "[W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict." (Internal quotation marks omitted.) *State* v. *Elsey*, 81 Conn. App. 738, 743–44, 841 A.2d 714, cert. denied, 269 Conn. 901, 852 A.2d 733 (2004).

"[A]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty. . . . Furthermore, [i]n [our] process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact

of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Internal quotation marks omitted.) *State* v. *Garner*, 270 Conn. 458, 472–73, 853 A.2d 478 (2004).

In support of his claim, the defendant asserts that neither of the witnesses to the robbery positively could identify him as the perpetrator. He further argues that Mills' recognition of him in the surveillance videotape and her testimony thereto was insufficient to establish his identity beyond a reasonable doubt because Mills was not a witness to the crime, and her recognition was not based on the overall appearance of the perpetrator or any individual characteristics, but rather on the perpetrator's head covering, sneakers and posture. Last, the defendant refers to the lack of physical evidence as well as to contradictions in the testimony tending to establish a connection between him and the charged offenses.

On the basis of the evidence presented at trial and the inferences drawn therefrom, we conclude that the jury reasonably could have found that the state proved that the defendant was the perpetrator beyond a reasonable doubt. Mills' recognition of the defendant was not the only evidence presented as to his identity as the perpetrator. The jury had before it photographs from the surveillance videotape as well as a booking photograph of the defendant and a photographic array containing his photograph. The jury was therefore able to compare the images taken of the perpetrator of the robbery with photographs of the defendant and the defendant's appearance in court in reaching its determination as to whether the defendant was the perpetrator of the charged offenses. Furthermore, the jury could compare those photographic images with the descriptions of the perpetrator provided by Hyland and Wilson.

Additionally, witness testimony established that the defendant had borrowed Mills' vehicle without permission on the day of the robbery and that this vehicle was subsequently identified as the vehicle observed fleeing the robbery. Upon the vehicle's return, a pillowcase, a $20 bill and a note similar to the note used in the robbery were found inside. Further, Mills observed the defendant counting money, and, when she questioned him, he gave her $200 to silence her. The defendant's assertion that conflicting testimony renders this evidence insufficient is unavailing. "[T]he question of [the] identity of a perpetrator of a crime is a question of fact that is within the sole province of the jury to resolve. [I]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence. The rule is that the jury's function is to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) *State* v. *Ortiz*, 71 Conn. App. 865, 881, 804 A.2d 937, cert. denied, 261 Conn. 942, 808 A.2d 1136 (2002).

Viewing the evidence in the light most favorable to sustaining the verdict, we conclude that the cumulative effect of the evidence, namely, the photographic evidence and the testimony and reasonable inferences drawn therefrom, was sufficient to establish the identity of the defendant as the perpetrator of the charged offenses beyond a reasonable doubt.

## II

The defendant next claims that the court improperly denied his motion to suppress an identification of him in violation of his due process rights.[5] Specifically, the

[5] We note that the defendant's claim was preserved by a motion to suppress the identification. Although the defendant did not argue specifically that the identification procedure was unnecessarily suggestive and unreliable, the court denied the defendant's motion to suppress on those grounds.

defendant argues that the identification procedure was impermissibly suggestive, rendering the resulting identification unreliable.[6] We conclude that the identification at issue in this case does not require analysis under the line of cases pertaining to eyewitness identifications. We therefore conclude that the court properly denied the defendant's motion to suppress, although on a different basis.[7]

"The defendant bears the burden of proving that the identification procedures that resulted in his identification violated his due process rights. . . . To succeed, the defendant must show first [that] the identification procedure was unnecessarily suggestive; and second, if it is found to have been so, it must be determined whether the identification was nevertheless reliable based on an examination of the totality of the circumstances." (Internal quotation marks omitted.) *State* v. *Falcon*, 90 Conn. App. 111, 124, 876 A.2d 547, cert. denied, 275 Conn. 926, 883 A.2d 1248 (2005).

The due process test arose from a concern with mistaken *eyewitness identifications* resulting from suggestive police procedures. In *Stovall* v. *Denno*, 388 U.S. 293, 301–302, 87 S. Ct. 1967, 18 L. Ed. 2d 1199 (1967), the United States Supreme Court framed the basis of

[6] At oral argument, the defendant also asserted that Mills' testimony regarding her recognition of him in the surveillance videotape constituted improper opinion testimony as to an ultimate issue. The defendant relied on *State* v. *Finan*, 275 Conn. 60, 66, 881 A.2d 187 (2005), for the well settled proposition that "[i]t is improper for a witness to offer testimony that essentially constitutes a legal opinion about the guilt of the defendant." *Finan*, however, is distinguishable from the present case. In *Finan*, police officers testified as to their "suspicions" that the individual depicted in a surveillance videotape was the defendant. By contrast, Mills' recognition of the defendant was not based on opinion but fact.

[7] "It is axiomatic that [w]e may affirm a proper result of the trial court for a different reason." (Internal quotation marks omitted.) *Sorban* v. *Sterling Engineering Corp.*, 79 Conn. App. 444, 456, 830 A.2d 372, cert. denied, 266 Conn. 925, 835 A.2d 473 (2003).

a challenge to an identification as whether "the confrontation conducted . . . was so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law." The court more recently clarified that "[t]he driving force behind [*United States* v. *Wade*, 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967), *Gilbert* v. *California*, 388 U.S. 263, 87 S. Ct. 1951, 18 L. Ed. 2d 1178 (1967), and *Stovall*][8] . . . was the Court's concern with the problems of eyewitness identification. Usually the witness must testify about an encounter with a total stranger under circumstances of emergency or emotional stress. The witness' recollection of the stranger can be distorted easily by the circumstances or by later actions of the police. Thus, *Wade* and its companion cases reflect the concern that the jury not hear eyewitness testimony unless that evidence has aspects of reliability. . . . The factors to be considered [in determining reliability] include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." (Citations omitted.) *Manson* v. *Brathwaite*, 432 U.S. 98, 111–14, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977).

The identification of the defendant in this case is not within the category of identifications necessitating due process protection under *Wade* and its progeny. The present case is distinguishable from those cases in which a victim or other witness to a crime identifies

---

[8] The United States Supreme Court decided, on the same day, *United States* v. *Wade*, supra, 388 U.S. 218, *Gilbert* v. *California*, supra, 388 U.S. 263, and *Stovall* v. *Denno*, supra, 388 U.S. 293. Each of these cases concerned the constitutionality of pretrial identification evidence. *United States* v. *Wade*, supra, 223–27, and *Gilbert* v. *California*, supra, 269–74, were decided on the basis of the right to counsel at postindictment lineups while *Stovall* v. *Denno*, supra, 301–302, was decided on due process grounds.

the perpetrator of the crime under circumstances in which there is a possibility of a mistaken eyewitness identification. In such cases, due process analysis is applied. See, e.g., *State* v. *Nunez*, 93 Conn. App. 818, 825, 890 A.2d 636 (due process claim arising from victim identification of defendant through photographic array containing suspect), cert. denied, 278 Conn. 914, 899 A.2d 621, cert. denied, 549 U.S. 906, 127 S. Ct. 236, 166 L. Ed. 2d 186 (2006); *State* v. *Gardner*, 85 Conn. App. 786, 788–89, 859 A.2d 41 (2004) (due process claim arising from witness identifications of defendant through show-up procedure). In the present case, by contrast, Mills was not an eyewitness to the crime, but rather an acquaintance of the defendant, and she was asked whether she could identify the defendant by name on the basis of her knowledge acquired from her prior relationship with him. This is not a situation in which Mills was likely to be induced *through suggestive police procedures* to name the defendant mistakenly as the perpetrator of the robbery.

The defendant challenges the basis of Mills' recognition of him by arguing that her identification is unreliable. Specifically, the defendant refers to the fact that Mills relied on his sneakers, head covering, nose and posture in making her identification rather than his face or overall appearance. The defendant rests his argument on the due process factors for determining the reliability of an eyewitness identification. The defendant's argument, however, is misplaced. Due process analysis does not apply here; rather, the basis of Mills' recognition affects the *weight* of the identification as determined by the jury. "Short of the point at which the identification procedure produces a very substantial likelihood of irreparable misidentification . . . the identification evidence is for the jury to weigh . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Mitchell*, 204 Conn. 187, 203, 527 A.2d 1168,

cert. denied, 484 U.S. 927, 108 S. Ct. 293, 98 L. Ed. 252 (1987), quoting *Manson* v. *Brathwaite*, supra, 432 U.S. 116. In the present case, the surveillance photographs did not depict a whole image of the defendant. As a result, Mills had to explain how she was able to recognize the individual depicted in the photographs as the defendant. Despite the limited portrayal of the defendant in the photographs, Mills was unequivocal in her recognition of him.[9] Furthermore, the defendant had ample opportunity to cross-examine Mills concerning her identification. The defendant's cross-examination was, in fact, extensive. It was therefore within the province of the jury to determine what weight to accord Mills' testimony. We conclude on this basis that the court properly denied the defendant's motion to suppress the identification.[10]

### III

The defendant's final claim is that the court improperly limited cross-examination of the state's key witness in violation of his sixth amendment right to confrontation. Specifically, the defendant argues that the court improperly refused to permit him to cross-examine Mills about her possible involvement in a prior crime, thereby impairing his ability to explore Mills' possible motive for testifying against him and to impeach her credibility.

---

[9] In her statement to the police, Mills wrote, "[T]hat is [the defendant] for sure." Additionally, in response to the question, "[Who] do you recognize that to be?" Mills responded, "[The defendant]."

[10] The court denied the defendant's motion to suppress following a determination that Mills' identification of the defendant was reliable in light of the totality of the circumstances. Although the court need not have employed constitutional due process analysis, we agree with the court's conclusions. The identification was reliable; Mills knew the defendant and had been involved in a relationship with him prior to the identification. Furthermore, Mills was subject to cross-examination concerning her identification of the defendant and, as discussed, the jury was able to consider the basis of her recognition in evaluating the strength of the identification. See *State* v. *Ortiz*, 252 Conn. 533, 556, 747 A.2d 487 (2000).

The following additional facts are relevant to our disposition of the defendant's claim. Prior to calling Mills as a witness, the state addressed a motion in limine that it had filed, requesting the court to limit the scope of the defendant's cross-examination of Mills. Specifically, the state sought to confine the questioning to the issue of whether Mills had received any consideration in the prior matter for her cooperation with the police and the state in the present case. Following argument from counsel, the court ruled that the defendant could question Mills as to whether she could have been charged in the prior crime, whether she had testified for the state in the past and whether she received any consideration for her testimony in the present case but concluded that the specific facts of the prior case were not relevant to the case at hand.

"We traditionally apply a two part analysis to determine whether a party has been deprived of effective cross-examination. First, we determine whether the defendant received the minimum opportunity for cross-examination of adverse witnesses required by the constitution. . . . If so, we then consider whether the trial court's restriction of cross-examination amounted to an abuse of discretion under the rules of evidence. . . . [T]he sixth amendment to the [United States] constitution guarantees the right of an accused in a criminal prosecution to confront the witnesses against him. . . . The primary interest secured by confrontation is the right to cross-examination . . . . The confrontation clause does not [however] suspend the rules of evidence to give the defendant the right to engage in unrestricted cross-examination." (Internal quotation marks omitted.) *State* v. *Howard F.*, 86 Conn. App. 702, 716, 862 A.2d 331 (2004), cert. denied, 273 Conn. 924, 871 A.2d 1032 (2005). "Only relevant evidence may be elicited through cross-examination. . . . The court determines

whether the evidence sought on cross-examination is relevant by determining whether that evidence renders the existence of [other facts] either certain or more probable." (Internal quotation marks omitted.) *State* v. *Grant*, 89 Conn. App. 635, 640, 874 A.2d 330, cert. denied, 275 Conn. 903, 882 A.2d 678 (2005).

We conclude that the specific facts of the prior crime were not relevant to the present case and that permitting inquiry into them would have enmeshed the jury in the analysis of collateral matters. It is well settled that "[t]he proffering party bears the burden of establishing the relevance of the offered testimony." (Internal quotation marks omitted.) Id. The defendant's argument as to the relevance of the details of the prior crime rested on his speculation that Mills could have been charged as a coconspirator, and the fact that she was not suggests that she received consideration for her testimony against the defendant in the present case, thereby providing her with a motive to testify falsely. There was, however, nothing in the record to support the defendant's theory. To the contrary, the evidence before the court was that Mills was never considered a suspect and that there was insufficient probable cause to charge her as a coconspirator. There were also no promises made to Mills by the state with respect to the prior crime in exchange for her cooperation in the present case. Moreover, the court permitted the defendant to question Mills as to whether she could have been charged, whether she received consideration for her testimony in the present case and whether she had testified for the state in the past. This latitude in questioning safeguarded the defendant's right to elicit evidence concerning Mills' credibility, motives and potential bias. We therefore conclude that the defendant's constitutional right to confront Mills was not

violated and that the court did not abuse its discretion in restricting the cross-examination.[11]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[11] The defendant characterized his claim as a violation of his rights to confrontation and to present a defense but analyzed the claim as an infringement of the right to confrontation. We therefore address only the issue that has been briefed properly. "[Appellate courts] are not required to review issues that have been improperly presented . . . through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *State* v. *Colon*, 272 Conn. 106, 153 n.19, 864 A.2d 666 (2004), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005).