216 P.3d 463 (2009)
STATE of Washington, Respondent,
v.
Earnest COLLINS, Appellant.
No. 61646-3-I.
Court of Appeals of Washington, Division 1.
September 21, 2009.
*464 Christopher Gibson, Nielsen Broman & Koch PLLC, Seattle, WA, for Appellant.
Donna Wise, Seattle, WA, Jordan McCabe, Attorney at Law, Lakebay, WA, for Respondent.

PUBLISHED IN PART
ELLINGTON, J.
¶ 1 In the early morning hours of July 10, 2007, taxi driver Jagjit Singh was shot and killed in his cab, which was then set afire. Earnest Collins was convicted of the crimes. Collins appeals on numerous grounds, including a due process challenge to his identification as the shooter from cab surveillance photos. We reject his argument that due process was violated by the identification process, find no merit in his other contentions, and affirm.

FACTS
¶ 2 Early on Tuesday, July 10, 2007, the Far West Taxi Company received a call requesting a cab at 3840 South 177th Street in Sea-Tac, Washington. The caller identified himself as "Lenell," and gave his phone number as XXX-XXX-XXXX. He called back to change the address to 3841 South 177th Street. The calls were recorded.
¶ 3 Driving Far West cab 119, Jagjit Singh responded to the call. The cab was equipped with a security camera, which recorded images of a man getting into the back seat of the cab at 2:45 a.m. and shooting Singh twice in the head. Shortly thereafter, the cab, with Singh's body still inside, was fully engulfed in flames in front of 3840 South 177th Street. Earnest Lenell Collins lived at that address with his parents, his younger brother Vernell, and three sisters.
¶ 4 An arson expert concluded the car fire was set on or around the victim, possibly *465 with a road flare or firework. A search of the Collins residence yielded bullets scattered around the house, including many for use in handguns, roman candle type fireworks, two white t-shirts smelling of bleach, one with burn holes, and pieces of fabric from a shirt that were burnt, damp, and bloodstained.
¶ 5 Forensic analysis revealed a mixed DNA profile. The majority of the DNA was from Singh. Collins was a possible contributor to the profile, but Vernell was not.
¶ 6 On the evening of the murder, using false names, Earnest and Vernell Collins fled to Chicago on a Greyhound bus. They were arrested there in late July and returned to Seattle.
¶ 7 The telephone number given by the caller belonged to a cell phone purchased by one of Collins' girlfriends, Melisa Washington, who told police she sold the phone to Collins and routinely called him at that number up to the day before the crime. Police obtained a warrant for a voice exemplar to compare Collins' voice to that of the person who called for the cab. Collins refused to provide the exemplar.
¶ 8 Collins was charged with murder in the first degree (with two aggravating circumstances), felony murder in the first degree predicated on robbery, and arson in the first degree, all with firearm enhancements. After charges were filed, the State asked the court to compel a voice exemplar. Collins agreed to the order, but then refused to provide the exemplar. At trial, the court allowed the State to introduce Collins' refusals to provide an exemplar as evidence of consciousness of guilt.
¶ 9 Family and friends identified Collins as the person who called the cab company and the person in the taxicab photos. Collins was also identified as the man in the photos by faculty members and the security officer from his high school. Two acquaintances testified they saw a revolver in Collins' bedroom. Collins had told a friend that a good way to make money would be to rob a taxi cab.
¶ 10 Collins presented evidence that at the time of the murder, he was with one of his girlfriends, Omara Reece, and her sister, Natasha Reece. Natasha also testified that the person in the cab photos was not Collins. Other witnesses contradicted these accounts.
¶ 11 At the end of trial the State proposed, and the court gave, an accomplice liability instruction on the theory that Vernell may have helped Collins burn the cab.
¶ 12 The jury convicted Collins on all counts.

ANALYSIS

Identification Procedures
¶ 13 Collins argues his due process rights were violated because unduly suggestive procedures led to his identification as the person who summoned the cab and the person photographed shooting Singh. Specifically, Collins contends witnesses were "primed with his identity" before being shown the pictures or listening to the call recording.[1] He complains that before witnesses saw the photos or heard the tape, they were aware that he was a suspect and that police were expecting them to identify him.
¶ 14 Collins did not raise this issue below. As a general rule, appellate courts do not consider issues raised for the first time on appeal, but alleged manifest errors affecting constitutional rights may be raised for the first time on appeal.[2]
¶ 15 The reliability of suspect identification by victims or eyewitnesses implicates due process because impermissibly suggestive police procedures may result in mistaken identifications. Courts must therefore ensure that such testimony is reliable by considering the witness's opportunity to observe *466 the suspect, the accuracy of any prior descriptions, the witness's level of certainty, and the passage of time.[3]
¶ 16 The first question is whether these concerns apply when a witness recognizes someone in photographs. This is an issue of first impression in Washington and one rarely discussed in other jurisdictions.[4]
¶ 17 In State v. Felder,[5] the Appellate Court of Connecticut considered identification of a bank robber made by defendant's live-in girlfriend from bank surveillance tapes. Felder claimed the trial court erred in failing to apply the due process analysis for reliability of eyewitness identification.[6]
¶ 18 In its opinion rejecting this argument, the Felder court reviewed the United States Supreme Court's statement of the due process issue: "`Usually the witness must testify about an encounter with a total stranger under circumstances of emergency or emotional stress. The witness' recollection of the stranger can be distorted easily by the circumstances or by later actions of the police.'"[7]
¶ 19 As the Felder court pointed out, however, a witness identifying a known individual from a photograph "is not ... likely to be induced through suggestive police procedures to name the defendant mistakenly as the perpetrator of the [crime]."[8]
¶ 20 We agree. There is a wide difference between identification of a stranger seen only under the stress of a crime in progress and identification of a known individual in a photograph. There is no likelihood that recollection will be distorted by suggestive procedures when the witness already knows the person depicted. In the case of friends and family, as here, the likelier outcome would be the witness's relief in being able to say the person depicted was not Collins. Known acquaintance identifications may be subject to error, but suggestive police procedures are not a likely cause. Further, the accepted due process analysis has little utility in such situations. Opportunity to observe and accuracy of prior identifications are largely or entirely irrelevant.
¶ 21 The identification of a suspect by an acquaintance does not raise the due process concerns that arise when an eyewitness identification is tainted by suggestive procedures.[9] Identification of Collins as the person in the cab photographs or the voice on the telephone call recording did not violate due process.

Identity Opinion Testimony
¶ 22 Collins also contends that testimony concerning the identity of the person shown in the taxicab security photos amounted to improper opinions on guilt.
¶ 23 A lay witness may give opinion testimony if it is rationally based on perception and helpful to a clear understanding of the evidence.[10] A witness may not offer opinion testimony concerning the defendant's guilt, whether by direct statement or inference.[11] The fact that an opinion supports a finding of guilt, however, does not make the opinion improper.[12] "`[I]t is the very fact that such opinions imply that the defendant *467 is guilty which makes the evidence relevant and material.'"[13] The identity testimony here contained no opinions about Collins' guilt. It was based solely on the witnesses' perceptions and their familiarity with Collins.
¶ 24 Collins also contends the testimony invaded the province of the jury because the photographs were available to the jury for review and he was present in the courtroom.[14] This argument rests upon State v. Jamison,[15] which held that testimony identifying the defendant as the robber shown in surveillance photographs invaded the province of the jury because the jury could compare the defendant's appearance to the photographs, and the testimony put the jury "in no better position to make that critical determination."[16]
¶ 25 Collins' reliance is misplaced. The Jamison court stressed the principle that identity opinion testimony is admissible when it is useful to the jury:
[W]e do not suggest that opinion testimony of identification based on knowledge of a defendant's appearance at or near the time of taking a surveillance photograph necessarily is inadmissible. Where such knowledge can actually assist the jury in correctly understanding matters that are not within their common experience, such opinion testimony is admissible. Here there was no evidence that, for example, the photographs failed to clearly or accurately depict the robber, or that defendant's appearance had changed or had been altered prior to trial or that he had certain peculiarities not readily comparable under trial conditions.[[17]]
¶ 26 This accords with the weight of authority, which holds that identity testimony is helpful "at least when the witness possesses sufficiently relevant familiarity with the defendant that the jury cannot also possess, and when the photographs are not either so unmistakably clear or so hopelessly obscure that the witness is no better-suited than the jury to make the identification."[18] Human features develop in the mind's eye over time. Witnesses who have interacted with the defendant in a variety of circumstances, in a way the jury could not, may have a great advantage over the jury's limited exposure to the defendant in a sterile courtroom setting.[19]
¶ 27 Further, as the Jamison court acknowledged, identification opinion testimony may be particularly helpful where the photography is imperfect.[20] Here, the cab surveillance system produced still photographs at set intervals. The photos are black and white, blurry, and grainy. Lighting conditions in the cab were poor. The passenger wore a baseball cap that cast a shadow over his eyes in all the images, and cast a shadow over his entire face in some. He wore a bulky coat that concealed his build. He also *468 held a cigarette in his mouth, a posture in which the jury presumably did not observe Collins during trial.
¶ 28 The opinion of Collins' acquaintances on the identity of the person in the photographs was helpful to the jury and the court did not err in admitting it.

Court Orders for Voice Exemplars
¶ 29 Collins contends his refusal to provide a voice exemplar should not have been admitted to prove consciousness of guilt because the order requiring the exemplar violated his rights under the Fourth Amendment, the Washington Constitution, and Criminal Rule (Cr.R) 4.7.
¶ 30 Article I, section 7 of the Washington Constitution provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law" and requires a determination of whether there was a disturbance of one's private affairs and, if so, whether the disturbance was authorized by law.[21][22] "Private affairs" are "those privacy interests which citizens of this state have held, and should be entitled to hold, safe from government trespass absent a warrant."[23] In determining whether a privacy interest merits article I, section 7 protection, courts consider whether the information obtained reveals "intimate or discrete" details of a person's life,[24] what expectation of privacy a person has in the information sought, whether there are historical protections afforded to the perceived interest, and the purpose for which the information is acquired and by whom it is kept.[25]
¶ 31 Collins' argument on this issue is limited to citing several cases holding that the nonconsensual collection and analysis of blood or urine invokes privacy concerns.[26] He otherwise fails to address any of the relevant inquiries in a private affairs determination. He has thus provided us no basis for consideration of his argument.[27]
¶ 32 Collins' Fourth Amendment argument has no merit. In United States v. Dionisio,[28] the Supreme Court held that a directive to provide a voice exemplar does not infringe upon any interest protected by the Fourth Amendment because no person can have a reasonable expectation of privacy in his voice:
The physical characteristics of a person's voice, its tone and manner, as opposed to the content of a specific conversation, are constantly exposed to the public. Like a man's facial characteristics, or handwriting, his voice is repeatedly produced for others to hear. No person can have a reasonable expectation that others will not know the sound of his voice, any more than he can reasonably expect that his face will *469 be a mystery to the world.[[29]]
Collins' Fourth Amendment argument fails.
¶ 33 Collins next argues that voice exemplars are not authorized by the criminal discovery rule, CrR 4.7. Court rules are interpreted under the rules for interpretation of statutes.[30] Issues of statutory construction and interpretation are questions of law, reviewed de novo.[31] We give effect to the plain language of the rule, discerned by reading it in its entirety and harmonizing all of its provisions.[32]
¶ 34 The State contends voice exemplars are authorized by CrR 4.7(b)(2)(ii), (vi) and/or (viii). CrR 4.7(b)(2)(ii) authorizes the court to require a defendant to speak for identification by a witness to an offense. CrR 4.7(b)(2)(vii) authorizes the court to order handwriting exemplars. CrR 4.7(b)(2)(vi) and (viii) authorize orders for physical examinations.
¶ 35 Collins responds that speaking for identification by a witness is not the same as providing a voice exemplar for purposes of forensic comparison to an existing recording, and that the other sections of the rule are inapposite.
¶ 36 It is true that none of these provisions expressly authorizes a voice exemplar. But such a procedure is in the nature of a physical examination of the defendant's voice, and appears to us to fall within the authority of the physical examination sections of the rule and, by analogy, the handwriting section of the rule.[33]
¶ 37 We need not decide this question, however, because the only relevance of this argument is its necessity to Collins' true contention, which is that the court erred in allowing the State to introduce his refusal to provide the exemplar as evidence of consciousness of guilt. There was no error.
¶ 38 First, Collins agreed to the order. He refused to obey it but never challenged it. Further, the exemplar was initially required by a search warrant, with which Collins refused to comply but which he also never challenged.[34] The court admitted evidence that Collins refused to comply with either the search warrant or the order. Evidence of Collins' refusal to obey the order was cumulative and of very minor significance in light of the evidence as a whole.[35]
¶ 39 Affirmed.
¶ 40 The balance of this opinion having no precedential value, the panel has determined it should not be published in accordance with RCW 2.06.040.
WE CONCUR: DWYER, A.C.J., and GROSSE, J.
NOTES
[1] Br. of Appellant at 28. See State v. Vickers, 148 Wash.2d 91, 118, 59 P.3d 58 (2002) (out of court identification violates due process if it is so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification).
[2] RAP 2.5(a); State v. Tolias, 135 Wash.2d 133, 140, 954 P.2d 907 (1998).
[3] Manson v. Brathwaite, 432 U.S. 98, 111-14, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).
[4] Washington cases applying due process analysis to identification testimony all concern identification of the perpetrator of a crime by an eyewitness. See, e.g., State v. Vickers, 148 Wash.2d 91, 118, 59 P.3d 58 (2002) (out of court identification violates due process if so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification).
[5] 99 Conn.App. 18, 912 A.2d 1054 (2007).
[6] Id. at 1060-62.
[7] Id. at 1061 (quoting Manson, 432 U.S. at 111-14, 97 S.Ct. 2243).
[8] Id. (emphasis omitted).
[9] We need not decide the question, but we are doubtful any impermissibly suggestive procedures occurred here.
[10] ER 602, 701; State v. Hardy, 76 Wash.App. 188, 190, 884 P.2d 8 (1994).
[11] State v. Dolan, 118 Wash.App. 323, 329, 73 P.3d 1011 (2003).
[12] City of Seattle v. Heatley, 70 Wash.App. 573, 579, 854 P.2d 658 (1993).
[13] Id. (alteration in original) (quoting State v. Wilber, 55 Wash.App. 294, 298 n. 1, 777 P.2d 36 (1989)).
[14] To the extent Collins did not object to witness testimony on this ground, his argument is raised for the first time on appeal. However, because the challenge involves a constitutional right, we may address it under RAP 2.5(a). See State v. Jones, 71 Wash.App. 798, 813, 863 P.2d 85 (1993) (error in admission of evidence that invades the province of the jury is of constitutional magnitude).
[15] 93 Wash.2d 794, 613 P.2d 776 (1980).
[16] Id. at 799, 613 P.2d 776.
[17] Id.; see also Hardy, 76 Wash.App. at 190-92, 884 P.2d 8 (opinion concerning identity of person depicted in surveillance video admissible and not invasion of the province of the jury where witness had known the defendant for several years and thus was in a better position to identify the defendant in the somewhat grainy videotape than the jury, who had only seen defendant motionless in court; jury was free to disbelieve the witness).
[18] United States v. Jackman, 48 F.3d 1, 4-5 (1st Cir.(Mass) 1995) (discussing the admissibility under Fed. Evid. Rule 701 of opinion testimony identifying a defendant from surveillance photographs). Because ER 701 is identical to Federal Rule 701, this court may look to federal decisions for guidance in construing ER 701. See State v. Copeland, 130 Wash.2d 244, 258, 922 P.2d 1304 (1996).
[19] United States v. Allen, 787 F.2d 933 (4th. Cir.(Va.) 1986), vacated on other grounds, 479 U.S. 1077, 107 S.Ct. 1271, 94 L.Ed.2d 132 (1987).
[20] Jamison, 93 Wash.2d at 799, 613 P.2d 776.
[21] In re Maxfield, 133 Wash.2d 332, 339, 945 P.2d 196 (1997).
[22] A claim under article I, section 7 warrants an inquiry on independent state constitutional grounds without the need for a Gunwall analysis. McNabb v. Dep't of Corrections, 163 Wash.2d 393, 399-400, 180 P.3d 1257 (2008) (citing State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808 (1986)).
[23] State v. Myrick, 102 Wash.2d 506, 511, 688 P.2d 151 (1984).
[24] State v. Jorden, 160 Wash.2d 121, 126, 156 P.3d 893 (2007).
[25] Id. at 127, 156 P.3d 893.
[26] Collins cites State v. Rose, 146 Wash.App. 439, 191 P.3d 83 (2008) (invalidating weekly urinalysis as part of Mason County's standard condition of pretrial release); Robinson v. City of Seattle, 102 Wash.App. 795, 10 P.3d 452 (2000) (partially invalidating the city's preemployment drug testing program); State v. Meacham, 93 Wash.2d 735, 612 P.2d 795 (1980) (court ordered blood test in proceedings to establish paternity a search, but not unreasonable under the Fourth Amendment); State v. Curran, 116 Wash.2d 174, 804 P.2d 558 (1991) (blood test mandated by RCW 46.20.308(3) when a driver is suspected of committing vehicular homicide while under the influence of alcohol is a search, but not an unreasonable one under either state or federal constitution), overruled on other grounds by State v. Berlin, 133 Wash.2d 541, 947 P.2d 700 (1997).
[27] "Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration." Palmer v. Jensen, 81 Wash. App. 148, 913 P.2d 413 (1996); RAP 10.3(a)(6).
[28] 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973).
[29] Id. at 14, 93 S.Ct. 764.
[30] State v. George, 160 Wash.2d 727, 735, 158 P.3d 1169 (2007).
[31] State v. O'Connor, 155 Wash.2d 335, 343, 119 P.3d 806 (2005).
[32] Id.
[33] Collins also argues evidence of his refusal to comply was inadmissible under ER 404(b). Collins did not object on that basis below and, contrary to Collins' contention, neither did the court raise the issue sua sponte. Application of ER 404(b) requires a balancing of interests by the trial court. State v. Kelly, 102 Wash.2d 188, 198, 685 P.2d 564 (1984). We decline to address it for the first time on appeal. See State v. O'Neill, 91 Wash.App. 978, 992, 967 P.2d 985 (1998).
[34] In his reply brief, Collins argues for the first time that the search warrant was not "authority of law" for Fourth Amendment and article I, section 7 purposes because the State did not show that the evidence to be obtained through voice comparison analysis would be admissible under Frye v. United States, 54 App. D.C. 46, 293 F. 1013 (1923). We decline to address this belated argument. See King v. Rice, 146 Wash.App. 662, 673, 191 P.3d 946 (2008).
[35] State v. Bourgeois, 133 Wash.2d 389, 403, 945 P.2d 1120 (1997) (improper admission of evidence constitutes harmless error if of minor significance in relation to evidence as a whole).