# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

                Respondent,

                v.

GARY D. KOLLMAN,

                Appellant.

)
)
)
)
)
)
)
)
)
)
)
)

No. 69195-3-I

DIVISION ONE

UNPUBLISHED

FILED: <u>February 18, 2014</u>

Cox, J. — Gary Kollman appeals his judgment and sentence for his conviction of attempting to elude a pursuing police vehicle. He claims that the trial court abused its discretion by admitting certain police officer testimony at trial. Kollman also claims that the trial court abused its discretion when it denied his motion for a new trial, refused to strike the jury's special verdict finding, and refused to grant an exceptional sentence downward.

In his Statement of Additional Grounds, Kollman makes additional arguments that we discuss later in this opinion. Because we conclude there was no reversible error in this case, we affirm.

The State charged Kollman with attempting to elude a pursuing police vehicle. The charge was based on an incident that occurred in 2010. The information alleged that the crime "was aggravated by the following circumstance: one or more persons other than the defendant or the pursuing law

enforcement officer were threatened with physical injury or harm by [Kollman's] actions while committing the crime . . . ."

Before trial, the defense moved in limine to prohibit, among other things, "[a]ny opinion testimony that [Kollman's] driving was 'reckless' or that he was endangering other motorists on the road." The court granted this motion.

At trial, Sergeant Bart Foutch, one of the pursuing police officers, described Kollman's driving. He testified that he observed Kollman cut off another vehicle on the road. Officer Foutch then stated that he "thought [Kollman] was going to kill the people that were in that car" and that he "was almost certain that they were going to die." Kollman objected, and it was overruled.

The jury found Kollman guilty. The jury also returned a special verdict in favor of the aggravating factor.

Several days later, Kollman moved for a new trial or, in the alternative, to strike the jury's special verdict finding on the grounds that the court "allowed Officer Foutch to repeatedly state that he thought innocent bystanders were 'dead' when [Kollman] cut in front of them." The court denied this motion.

At sentencing, Kollman argued for an exceptional sentence below the standard range pursuant to a statutory mitigating factor for diminished capacity based on Kollman's history of panic disorder and posttraumatic stress disorder. The court concluded that an exceptional sentence was unwarranted and sentenced Kollman to confinement for twelve months and one day.

Kollman appeals.

## OPINION TESTIMONY

Kollman argues that the trial court abused its discretion when it admitted certain testimony at trial from Officer Foutch. He also contends that the error was not harmless. We hold that any error in admitting this evidence over Kollman's objection was harmless.

### Preservation of Issue

As a preliminary matter, the State argues that this issue has not been preserved for appeal. The State contends that Kollman did not specify the particular grounds upon which his objections at trial were based. The State also argues that the issue cannot be heard for the first time on appeal because it is not "manifest constitutional error." We disagree with the first and need not reach the second argument.

ER 103(a)(1) requires "a timely objection . . . stating the specific ground of objection, *if the specific ground was not apparent from the context* . . . ."[1]

Here, the specific ground of objection was apparent from the context. Kollman's motion in limine sought to prohibit "[a]ny opinion testimony that [Kollman's] driving was 'reckless' or that he was endangering other motorists on the road." During a pretrial hearing, Kollman indicated that he "may object to some specific questions" related to this motion. Further, as Kollman points out, the prosecutor responded to the objection by stating: "That's [Officer Foutch's] perception at the time, as he is observing the events." The prosecutor's

---

[1] (Emphasis added.)

response provides further support that the ground for the objection was apparent from the context.

The State also contends that the testimony was not manifest constitutional error that can be raised for the first time on appeal. But, as discussed above, Kollman is not raising this issue for the first time on appeal. Accordingly, we need not consider this argument any further.

### Officer Foutch's Testimony

Kollman argues that the trial court abused its discretion when it allowed "highly prejudicial, subjective opinion testimony" from Officer Foutch. Specifically, he argues that the testimony was improper because it violated an order in limine, it was not competent expert testimony, it was inflammatory, and it invaded the province of the jury. Assuming without deciding that the admission of this testimony was improper, we conclude that the admission of such evidence was harmless under both the constitutional and nonconstitutional standards.

A trial court's decision to admit opinion testimony is reviewed for abuse of discretion.[2] A trial court abuses its discretion when its decision is "manifestly unreasonable or based upon untenable grounds or reasons."[3]

The record reflects the following exchanges:

[Prosecutor]: When [Kollman] cut to his left in front of what you have marked as Vehicle 1, did that concern you?

[Officer Foutch]: *I thought they were dead.*

[Prosecutor]: Who is "they"?

---

[2] State v. Ortiz, 119 Wn.2d 294, 308, 831 P.2d 1060 (1992).

[3] State v. Brown, 132 Wn.2d 529, 572, 940 P.2d 546 (1997).

4

[Defense Counsel]: I object; I move to strike that answer.

[Prosecutor]: That's his perception at the time, as he is observing the events.

The Court: The objection is overruled.

[Officer Foutch]: *I thought he was going to kill the people that were in that car.*

[Prosecutor]: How come?

[Officer Foutch]: They were traveling sixty miles an hour; and you have a vehicle that takes a left-hand turn in front of you at sixty miles an hour, and he's doing seventy or eighty, *I was almost certain that they were going to die.*

[Prosecutor]: Did they take any evasive action?

[Officer Foutch]: I believe that they - -

[Defense Counsel]: Same objection, your Honor. I'd like a continuing objection.

[The Court]: You may have a continuing objection. The objection is overruled.[4]

The trial court overruled these objections during trial. Likewise, when Kollman moved for a new trial based on this testimony after the jury's adverse verdict, the trial court reasoned that this testimony was proper because Officer Foutch was talking about his observations and his fear for his safety and that of others.[5]

Kollman argues here as he did below that this testimony violated the trial court's order in limine. The court's ruling on the motion in limine was that "[the

---

[4] Report of Proceedings (June 26, 2012) at 70-71 (emphasis added).

[5] Report of Proceedings (Aug. 2, 2012) at 536.

officer] can testify only as to what he observed. He can't use the term 'reckless.'" As this record plainly shows, Officer Foutch did testify to what he observed and did not use the term "reckless." Thus, the testimony to which Kollman objected complied with the court's ruling.

Kollman next argues that Officer Foutch's testimony was improper *expert* testimony because it did not meet the requirements of ER 702. But this testimony was not based on scientific or specialized knowledge. As the trial court correctly stated, Officer Foutch was not testifying as an expert. Officer Foutch's testimony was based upon his perceptions and observations as he pursued Kollman. He was testifying in this respect as a lay witness.

Kollman also argues that Officer Foutch's statements were prejudicial "because of their inherent tendency to arouse the emotions of the jury." He primarily relies on City of Auburn v. Hedlund to support this argument.[6] There, a 911 caller described a gruesome accident scene with decapitated bodies.[7] The court concluded that the prejudice outweighed the probative value of the testimony.[8] But that case is distinguishable. Here, the officer's perception that people might die was not nearly as inflammatory or prejudicial as that case. His reliance on this case is not persuasive.

Lastly, Kollman argues that the testimony was improper because it invaded the province of the jury on the issue of dangerousness to others. This

---

[6] 165 Wn.2d 645, 201 P.3d 315 (2009).

[7] Id. at 655.

[8] Id. at 656.

question was in the special verdict form. The special verdict form asked the jury: "Was any person, other than Gary Kollman or a pursuing law enforcement officer, threatened with physical injury or harm by the actions of Gary Kollman during his commission of the crime of attempting to elude a police vehicle?"

As a general rule, "no witness, lay or expert, may 'testify to his opinion as to the guilt of a defendant, whether by direct statement or inference.'"[9] Such an opinion is unfairly prejudicial because it "'invad[es] the exclusive province of the finder of fact.'"[10] Likewise, a witness may not give improper legal conclusions, parrot a legal standard, or use conclusory legal terms such as "guilt" or "intent."[11] "The goal in prohibiting a witness from expressing an opinion about the defendant's guilt or innocence is to avoid having the witness tell the jury what result to reach."[12]

But "testimony that is not a direct comment on the defendant's guilt or on the veracity of a witness, is otherwise helpful to the jury, and is based on inferences from the evidence is not improper opinion testimony."[13] In fact, ER 704 expressly allows for opinion testimony on an ultimate issue, as long as the evidence is otherwise admissible.[14] "'The fact that an opinion supports a finding

---

[9] City of Seattle v. Heatley, 70 Wn. App. 573, 577, 854 P.2d 658 (1993) (quoting State v. Black, 109 Wn.2d 336, 348, 745 P.2d 12 (1987)).

[10] Id. (alteration in original) (quoting Black, 109 Wn.2d at 348).

[11] See State v. Blake, 172 Wn. App. 515, 525-28, 298 P.3d 769 (2012), review denied, 177 Wn.2d 1010 (2013).

[12] State v. Baird, 83 Wn. App. 477, 485, 922 P.2d 157 (1996).

[13] Heatley, 70 Wn. App. at 578.

[14] Id. at 578-79.

of guilt . . . does not make the opinion improper.'"[15]

The trial court "must be accorded broad discretion to determine the admissibility of ultimate issue testimony."[16] This court has expressly declined to take an expansive view of claims that testimony constitutes an opinion of guilt.[17]

"Whether testimony constitutes an impermissible opinion on guilt or a permissible opinion embracing an 'ultimate issue' will generally depend on the specific circumstances of each case . . . ."[18] State v. Montgomery cites five factors that a court may consider in deciding whether to admit such evidence.[19] They include: "'(1) 'the type of witness involved, (2) the specific nature of the testimony, (3) the nature of the charges, (4) the type of defense, and (5) the other evidence before the trier of fact.'"[20]

At oral argument, we gave the parties an opportunity to comment on the applicability of the Montgomery factors to this case.[21] Nothing said in reply to our request for comment convinces us that the admission of the testimony was anything other than harmless.

---

[15] Blake, 172 Wn. App. at 523 (alteration in original) (quoting State v. Collins, 152 Wn. App. 429, 436, 216 P.3d 463 (2009)).

[16] Heatley, 70 Wn. App. at 579.

[17] Id.

[18] Id.

[19] 163 Wn.2d 577, 183 P.3d 267 (2008).

[20] Id. at 591 (internal quotation marks omitted) (quoting State v. Demery, 144 Wn.2d 753, 759, 30 P.3d 1278 (2001)).

[21] 163 Wn.2d 577, 591, 183 P.3d 267 (2008).

Kollman relies here as he did below on State v. Farr-Lenzini to argue that Officer Foutch's testimony was improper because it addressed the major contested issue at trial.[22] In Farr-Lenzini, the major issue was whether Farr-Lenzini was willfully eluding.[23] There, the prosecutor asked the officer for an "opinion as to what the defendant's driving pattern exhibited."[24] The officer stated that the person "was attempting to get away from [him] and knew [the officer] was back there and refusing to stop."[25]

Here, the prosecutor did not ask for the officer's opinion, and the objections did not appear to focus on the questions that the prosecutor asked. Rather, they appeared to focus on Officer Foutch's responses. Additionally, the issue of dangerousness to third parties did not appear to be a major contested issue at trial. But the issue of dangerousness *was* the core issue in the special verdict.

Kollman also relies here, as he did below, on State v. Carlin, and State v. Haga.[26] In Carlin, the court stated it was arguably improper opinion for an officer to testify that a trained canine could track the defendant's "fresh guilt scent."[27]

---

[22] Appellant's Opening Brief at 19 (citing State v. Farr-Lenzini, 93 Wn. App. 453, 970 P.2d 313 (1999)).

[23] Farr-Lenzini, 93 Wn. App. at 464.

[24] Id. at 458.

[25] Id.

[26] Appellant's Opening Brief at 19-20 (citing State v. Carlin, 40 Wn. App. 698, 700 P.2d 323 (1985), overruled on other grounds by City of Seattle v. Heatley, 70 Wn. App. 573, 854 P.2d 658 (1993), State v. Haga, 8 Wn. App. 481, 507 P.2d 159 (1973)).

[27] Carlin, 40 Wn. App. at 703.

The court said this was particularly so where such an opinion is expressed by a government official such as a police officer.[28] In Haga, the court held that it was improper opinion for an ambulance driver to testify that the defendant showed no signs of grief.[29]

Those two cases examined testimony that expressed an opinion about the defendants' overall guilt.[30] Here, in contrast, Officer Foutch did not express an opinion as to Kollman's overall guilt. Moreover, he did not expressly give improper legal conclusions, parrot a legal standard, or use conclusory legal terms such as "guilt" or "intent." But, like Carlin, the testimony here was from a police officer. And arguably, the officer expressed an opinion on the aggravating factor.

Overall, none of the authorities cited by Kollman help answer the specific question presented in this case—how to examine this testimony as it relates to the core issue of an aggravating factor or special verdict.

On one hand, a witness is permitted to express an opinion on an ultimate issue of fact, and the aggravating factor is just that—a factual determination. On the other hand, this factual determination is the core issue and sole question for the jury to resolve in order to answer the special verdict. Arguably, expressing an opinion about this factual issue is akin to expressing an opinion on guilt as to the aggravating factor, giving a legal conclusion, or telling the jury how to resolve the special verdict.

---

[28] Id.

[29] Haga, 8 Wn. App. at 491-92.

[30] See Carlin, 40 Wn. App. at 703; Haga, 8 Wn. App. at 491-92.

We conclude on the basis of the authorities that we have just discussed that it is unnecessary for us to determine whether Officer Foutch's testimony invaded the province of the jury. Assuming without deciding that it did, the admission of such evidence was harmless under both the constitutional and nonconstitutional standards.

*Harmless Error*

Kollman argues that the error of admitting Officer Foutch's statements cannot be deemed harmless. We disagree.

Our supreme court adopted the "overwhelming untainted evidence" test as the proper standard for harmless error analysis in Washington.[31] Under this test, the appellate court "looks only at the untainted evidence to determine if the untainted evidence is so overwhelming that it necessarily leads to a finding of guilt."[32] "A constitutional error is harmless if the appellate court is convinced beyond a reasonable doubt that any reasonable jury would have reached the same result in absence of the error."[33]

"Where an error is not of constitutional magnitude, it requires reversal only if, within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred."[34]

---

[31] State v. Frost, 160 Wn.2d 765, 782, 161 P.3d 361 (2007) (citing State v. Guloy, 104 Wn.2d 412, 426, 705 P.2d 1182 (1985), cert. denied, 475 U.S. 1020 (1986)).

[32] Guloy, 104 Wn.2d at 426.

[33] Id. at 425.

[34] State v. Ashurst, 45 Wn. App. 48, 54, 723 P.2d 1189 (1986).

Here, under either standard, the error was harmless. We are convinced beyond a reasonable doubt that any reasonable jury would have reached the same result in absence of the claimed error. The record is replete with untainted testimony from pursuing officers about Kollman's dangerous driving maneuvers, high rates of speed, and near collisions.

For example, Officer Foutch testified that Kollman was driving between "seventy to eighty miles an hour" on a road with a "forty or forty-five" speed limit. He also testified: "Traffic would be slowing down for the traffic lights, and [Kollman] would cut vehicles off. [Kollman] would weave to the left and to the right. [Kollman] would pass vehicles on the right-hand side, which is extremely dangerous." Officer Foutch testified that he believed that the lights at three intersections were red and that "[Kollman] blew through the lights without stopping and without perceptibly slowing . . . ."

Officer Foutch also described an instance where "[Kollman] came up on two vehicles that were traveling side by side . . . [and Kollman] pulled out of his lane of travel and basically straddled the dotted line and split these two vehicles. To keep from being hit by [Kollman's] vehicle, both vehicles had to go off the side of the road."

Officer Tony Bittinger, another pursuing officer, described an instance where a vehicle "was forced to the right shoulder to avoid a collision." Additionally, he testified that Kollman traveled in speeds "[u]p to ninety miles per hour in a sixty mile per hour zone."

This evidence was not disputed. Significantly, Kollman testified that he could not remember much of what took place during the police pursuit. Thus, he was not in a position to contest the observations and testimony of Officer Foutch and Officer Bittinger.

We further note that during opening remarks to the jury, the State specifically asked the jury to find Kollman guilty of the underlying charge as well as the aggravating factor.[35] Kollman asked for an acquittal on the underlying charge but made no mention of the aggravating factor.[36] This request was consistent with Kollman's earlier representation to the court during argument on the motion in limine that whether Kollman's driving was reckless was "not an issue that [was] going to be greatly in dispute . . . ." We recognize that this statement was made while reserving the right to challenge specific testimony at the trial that followed. Nevertheless, the representation to the court that the issue would not be greatly disputed was a matter of record.

During closing argument to the jury, the State again asked for the jury to find Kollman guilty on the underlying charge as well as to decide that the aggravating factor existed. Kollman said nothing about the aggravating factor during closing. In fact, Kollman's attorney stated the "*only issue*" was whether Kollman was acting willfully.[37]

---

[35] Report of Proceedings (June 25, 2012) at 32.

[36] Id. at 33-42.

[37] Report of Proceedings (June 28, 2012) at 493.

In sum, based on the evidence in the record and the arguments of the parties, and assuming without deciding that Officer Foutch's testimony was improper opinion testimony, we conclude that such error was harmless beyond a reasonable doubt. There is no reversible error in this respect.

Kollman cites to the "contribution test" to argue that the error was not harmless. But in State v. Guloy, our supreme court rejected use of the "contribution test."[38] Accordingly, any reliance on this test is not persuasive.

Kollman also argues that the error is not harmless because Officer Foutch's testimony is "the only testimony in the entire trial court record that is relevant to the aggravating factor." He is mistaken. As we discussed earlier in this opinion, Kollman had no recollection of the events during the chase and pursuing officers revealed many details relevant to the aggravating factor. These details included Kollman's dangerous driving maneuvers, high speeds, and near collisions.

Next, Kollman argues that Officer Foutch's testimony regarding one of the near collisions was not corroborated by the other pursuing officers. But we know of no authority that holds that the absence of corroboration bars admissibility. More importantly, this court does not review credibility determinations on appeal.[39]

---

[38] 104 Wn.2d 412, 425-26, 705 P.2d 1182 (1985); see also State v. Coristine, 177 Wn.2d 370, 390-91, 300 P.3d 400 (2013) (Gonzalez, J., dissenting).

[39] Recreational Equip, Inc. v. World Wrapps Nw., Inc., 165 Wn. App. 553, 568, 266 P.3d 924 (2011).

Finally, Kollman points out that although he drove through red lights, there was no cross traffic at the time. He further argues that "no one testified that this driving actually endangered other drivers." But Kollman expressly moved in limine to prohibit such testimony. And these arguments ignore the other evidence supporting a finding of dangerousness—specifically the testimony of pursuing officers describing how Kollman almost caused accidents.

In sum, the error, if any, was harmless beyond a reasonable doubt.

For the same reasons, we also conclude that the trial court did not abuse its discretion when it denied Kollman's motion for a new trial, or, in the alternative, to strike the special verdict finding.

A court's decision to deny a motion for a new trial is reviewed for abuse of discretion.[40]

Kollman's motion was premised on the same theory—that the admission of Officer Foutch's testimony was improper. As discussed previously, the admission of Officer Foutch's testimony was, at worst, harmless error. The court's denial of the motion was not an abuse of discretion.

## SENTENCE

Kollman argues that the trial court abused its discretion in refusing to grant an exceptional sentence downward. We disagree.

Generally, courts do not review a standard range sentence. In State v. Williams, the supreme court explained: "[S]o long as the sentence falls within the proper presumptive sentencing ranges set by the legislature, there can be no

---

[40] State v. Burke, 163 Wn.2d 204, 210, 181 P.3d 1 (2008).

abuse of discretion as a matter of law as to the sentence's length."[41] Courts have stated that "[a] sentence range increased by an enhancement is still a standard range sentence."[42] But a criminal defendant "may appeal a standard range sentence if the sentencing court failed to comply with procedural requirements of the SRA or constitutional requirements."[43]

When a sentencing court declines to impose an exceptional sentence downward, appellate review "is limited to circumstances where the court has refused to exercise discretion at all or has relied on an impermissible basis for refusing to impose an exceptional sentence below the standard range."[44] "A court refuses to exercise its discretion if it refuses categorically to impose an exceptional sentence below the standard range under any circumstances; i.e., it takes the position that it will never impose a sentence below the standard range."[45] And a court relies on an impermissible basis if, for example, "it refuses to consider the request because of the defendant's race, sex, or religion."[46]

"[A] trial court that has considered the facts and has concluded that there is no basis for an exceptional sentence has exercised its discretion," and the ruling may not be appealed.[47]

---

[41] 149 Wn.2d 143, 146-47, 65 P.3d 1214 (2003).

[42] Gutierrez v. Dep't of Corrs, 146 Wn. App. 151, 155, 188 P.3d 546 (2008).

[43] State v. Osman, 157 Wn.2d 474, 481-82, 139 P.3d 334 (2006).

[44] State v. Garcia-Martinez, 88 Wn. App. 322, 330, 944 P.2d 1104 (1997).

[45] Id.

[46] Id.

[47] Id.

16

Here, the court exercised its discretion and did not rely on an impermissible basis. The court acknowledged the provision allowing it to consider diminished capacity, and it acknowledged that Kollman was diagnosed with panic disorder and posttraumatic stress disorder But the court also pointed to Kollman's history of "driving issues" and noted that Kollman made the choice to get into a car.

In sum, the court exercised its discretion when it considered the competing factors, and it relied on a permissible basis when it concluded that the requirements of diminished capacity had not been met. The court acted within its discretion when it sentenced Kollman at the bottom end of the standard range.

## STATEMENT OF ADDITIONAL GROUNDS

In his Statement of Additional Grounds, Kollman alleges a number of errors. None require reversal.

First, Kollman argues that "[b]ecause of medications and extreme cognitive impairment, and terrible pain, and trauma, [he] was under extreme duress and should not have been making any statements" to law enforcement after this incident. But it appears from the State's amended trial brief that Kollman entered into a stipulation before trial "allowing the State to elicit statements [Kollman] made immediately following his arrest." Accordingly, this argument is not persuasive.

Second, Kollman argues against the admission of a psychiatric report. But it is not clear what report Kollman is referring to, or how it was "used against

17

[him]" as he alleges. Because this argument is not supported by credible evidence in the record, we do not review it.[48]

Third, Kollman says "it should be noted" that there was prosecutorial misconduct prior to trial. This statement is true. Prior to trial, the State moved to amend the information, and Kollman moved to dismiss on the grounds that it constituted misconduct and prejudiced his rights to a fair trial. The court denied the motion to dismiss, concluding that the government's error constituted misconduct but that Kollman was not prejudiced in his ability to present a defense. Nevertheless, Kollman does not make any argument about this misconduct that this court can review.

Fourth, Kollman argues that he did not have the requisite mental state and lacked the intent and ability to control his actions. It appears that Kollman is challenging the sufficiency of the evidence as to the willfulness element. The jury rejected Kollman's diminished capacity defense by finding him guilty.

To convict Kollman of attempting to elude a pursuing police vehicle, the State was required to prove, among other things, that "[Kollman] willfully failed or refused to immediately bring the vehicle to a stop."

Evidence is sufficient when any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt.[49]

---

[48] See RAP 10.10(c) (stating that an appellate court will not consider an argument made in a statement of additional grounds for review if it does not inform the court of the nature and occurrence of the alleged errors).

[49] State v. Green, 94 Wn.2d 216, 221, 616 P.2d 628 (1980); Jackson v. Virginia, 443 U.S. 307, 318, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).

At trial, there was sufficient evidence for a rational trier or fact to find that Kollman's actions were willful. The State argued that Kollman engaged in difficult driving maneuvers requiring mental concentration, that he obeyed commands from the police, that he was "cognizant," and that he made tactical decisions.

There was testimony that Kollman briefly put his hands in the air when commanded. Kollman's wife testified that during a prior similar incident, Kollman was cognizant and able to pull over. The State's expert testified that after this incident Kollman stated: "The biggest thing was not to stop. Four-wheel drive cars when they spin, you stall." This testimony supports the State's arguments.

Finally, Kollman argues that the judge should have granted his request for an exceptional downward sentence. But, for the reasons discussed above, the trial court did not abuse its discretion when it denied this request.

We affirm the judgment and sentence.

_____ Cox, J.

WE CONCUR:

_____

_____