# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 76437-3-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| ANDREW DENVER S BUCHANAN, | ) | |
| | ) | |
| Appellant. | ) | FILED: September 17, 2018 |
| | ) | |

LEACH, J. — Andrew Buchanan appeals his multiple convictions and his sentence. He claims that the admission of opinion evidence violated his constitutional right to an impartial jury, that he received ineffective assistance of counsel, and that the trial court made several errors when sentencing him. Because each of his claims lacks merit, we affirm.

## FACTS

Joseph and Cindy Divita own a storage shed that they use to store family property. In mid-September 2016, the shed's alarm was activated. A few days later, Divita[1] found the door ajar but determined that nothing was missing. On September 26, Divita found that someone had broken into the shed and the safe inside. Someone had stolen a number of items, including jewelry from the safe.

---

[1] "Divita" refers to Joseph Divita.

The shed alarm went off again on September 27, and Divita found that his shotgun and rifle were missing.

Images from a video camera inside the shed showed a woman and a man. Divita testified that the images showed the man carrying two of Divita's firearms as he left the shed. Images from a camera located outside of the shed showed a vehicle that Swinomish Detective James Schwahn identified as one that Buchanan had recently purchased. Police obtained search warrants for the vehicle, Buchanan's storage unit, and the house where Buchanan was living. Police found items from Divita's shed at all three locations, including pieces of the stolen jewelry. Police also recovered some of the stolen jewelry from a number of jewelry vendors.

The State charged Buchanan with first degree burglary, second degree burglary, first degree theft, first degree trafficking in stolen property, and two counts each of second degree unlawful possession of a firearm and theft of a firearm. A jury found him guilty as charged. He appeals.

## ANALYSIS

### Right to an Impartial Jury

Buchanan challenges the admission of Schwahn's opinion testimony that the man in the surveillance video was carrying firearms; Buchanan claims this testimony infringed upon his right to an impartial jury under the Sixth Amendment

NO. 76437-3-I / 3

to the United States Constitution and article 1, section 22 of the Washington Constitution.[2]  We disagree.

A. *Manifest Constitutional Error*

As a preliminary matter, the State contends that this court should not review this claim because Buchanan did not raise the issue below.  An appellate court may refuse to review any claim of error that a party did not raise in the trial court unless one of three exceptions applies.[3]

First, Buchanan claims that his trial counsel did raise the issue below.  His counsel moved in limine to preclude any testimony "that narrates or provides any opinion, speculation, or personal interpretation about the content of any photograph or video evidence for which the witness was not personally present to observe at the time of occurrence and for which the witness lacks direct personal knowledge."  Buchanan contends that because the party who loses a motion in limine generally has a standing objection,[4] his counsel preserved the issue for appeal without objecting.  But the record provided to this court does not include the trial court's rulings on these motions in limine.  So we decline to review his claim on this basis.

---

[2] The Sixth Amendment states, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury."  Article 1, section 22 of the Washington Constitution states, "[T]he accused shall have the right to . . . a speedy public trial by an impartial jury."

[3] RAP 2.5(a).

[4] State v. Kelly, 102 Wn.2d 188, 193, 685 P.2d 564 (1984).

NO. 76437-3-I / 4

Second, Buchanan asserts that admission of Schwahn's testimony qualifies as manifest constitutional error, reviewable for the first time on appeal under RAP 2.5(a)(3). An error is manifest if it caused actual prejudice.[5] This means the defendant must make a plausible showing that the asserted error had practical and identifiable consequences in the trial.[6] But this court first decides whether the alleged error implicates a constitutional right. To determine if an error is of constitutional magnitude, a reviewing court assumes the alleged error occurred and then assesses if that error actually violated the defendant's constitutional rights.[7]

Buchanan contends that Schwahn's identification testimony infringed on his constitutional right to an impartial jury because Schwahn provided an improper opinion about his guilt. Opinion testimony about a criminal defendant's guilt violates the defendant's right to a trial by an impartial jury.[8] Buchanan likens his case to State v. Farr-Lenzini[9] and State v. Montgomery.[10]

The State charged Farr-Lenzini with attempting to elude police or, in the alternative, the lesser included crime of reckless driving.[11] The State asked the

---

[5] State v. Kirkman, 159 Wn.2d 918, 935, 155 P.3d 125 (2007).
[6] Kirkman, 159 Wn.2d at 935.
[7] State v. Kalebaugh, 179 Wn. App. 414, 420-21, 318 P.3d 288 (2014), aff'd, 183 Wn.2d 578, 355 P.3d 253 (2015).
[8] State v. Quaale, 182 Wn.2d 191, 199, 340 P.3d 213 (2014).
[9] 93 Wn. App. 453, 970 P.2d 313 (1999).
[10] 163 Wn.2d 577, 183 P.3d 267 (2008).
[11] Farr-Lenzini, 93 Wn. App. at 458.

-4-

pursuing police officer to give his opinion "as to what the defendant's driving pattern exhibited."[12] The officer responded that the driver "was attempting to get away from me and knew I was back there and refusing to stop."[13] Division Two of this court held that the officer's testimony about Farr-Lenzini's state of mind violated her right to a jury trial because it constituted an opinion about the intent element of the offenses.[14]

In Montgomery, the State charged the defendant with intent to manufacture methamphetamine.[15] One detective testified that he believed Montgomery was purchasing items with the requisite intent and another testified that the items "were purchased for manufacturing."[16] Our Supreme Court held that this testimony about Montgomery's state of mind amounted to improper opinions on guilt.[17]

Here, Schwahn testified that in the surveillance video played for the jury, the man pictured was carrying firearms:

> Q.  Now, let's go—move on to the—oh.  So first of all, before I leave the videos, did you make any observations on the video relating to the firearms?

---

[12] Farr-Lenzini, 93 Wn. App. at 458.
[13] Farr-Lenzini, 93 Wn. App. at 458.
[14] Farr-Lenzini, 93 Wn. App. at 463-64.
[15] Montgomery, 163 Wn.2d at 583.
[16] Montgomery, 163 Wn.2d at 588.
[17] Montgomery, 163 Wn.2d at 594-95.

A.    So the video where the alarm is set off, at that point prior to the alarm being set off you see a male walking across the video camera. And where he's heading is he's heading towards that door which was, like we said, was on the bottom there. So the south side of the building, he's walking towards the open door and you can see clearly in his hands that he's got two long objects that is, in my opinion, it's clear that—it looks to be rifles.

One of them is in a camo-style—kind of looked like a cloth case. That's the one that's in his right hand. The one that's in his left hand does not—doesn't appear to be in a case, or if it is in a case, it's a much more form-fitting case that's in his left hand, a little harder to see because it's black and kind of blends in with the shadows.

Buchanan asserts that similar to Farr-Lenzini and Montgomery, Schwahn opined on Buchanan's guilt with respect to the first degree burglary, theft of firearms, and unlawful possession of firearms counts, by testifying that in his "opinion," it was "clear" that the surveillance video showed the man pictured carrying firearms. As Buchanan acknowledged at oral argument, his view about the admissibility of opinion testimony in a criminal case would make nearly all opinion testimony inadmissible. But the fact that an opinion supports a finding of guilt does not make the opinion improper.[18]

Unlike the witnesses in Farr-Lenzini and Montgomery, Schwahn did not testify about Buchanan's intent. Schwahn expressed no opinion about whether Buchanan committed a crime or about the identity of the man in the video. He opined about possession, which supported a finding of guilt only for the firearm-

---

[18] State v. Collins, 152 Wn. App. 429, 436, 216 P.3d 463 (2009).

-6-

related offenses with which the State charged Buchanan. Thus, the challenged testimony did not violate Buchanan's right to an impartial jury. Buchanan does not show manifest constitutional error.

B. *Ineffective Assistance of Counsel*

Alternatively, Buchanan claims that he received ineffective assistance of counsel because his trial counsel did not object to Schwahn's alleged improper testimony on guilt. Claims of ineffective assistance present mixed questions of law and fact, which we review de novo.[19]

To prove ineffective assistance, the defendant must show that (1) counsel's performance was deficient and (2) counsel's deficient performance prejudiced the defense to the extent that it denied the defendant a fair trial.[20] If the defendant carries this burden, this court must reverse.[21] To prove deficient performance, the defendant must show that counsel's performance fell below an objective standard of reasonableness.[22] Appellate courts examine trial counsel's performance with great deference, and the defendant must overcome the presumption that the challenged action "'might be considered sound trial

---

[19] Strickland v. Washington, 466 U.S. 668, 698, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).
[20] Strickland, 466 U.S. at 687.
[21] State v. McFarland, 127 Wn.2d 322, 337, 899 P.2d 1251 (1995).
[22] Strickland, 466 U.S. at 687-88.

strategy.'"[23]   Generally, the decision of when or whether to object is trial strategy.[24]

Buchanan contends that defense counsel's failure to object to Schwahn's challenged testimony constitutes deficient performance.  He asserts that because Schwahn's testimony directly related to a disputed issue of fact, his counsel's failure to object was not trial strategy.  But counsel's performance is not deficient because counsel did not object to admissible testimony.[25]  ER 701 provides that a lay witness may give opinion testimony if it is rationally based on the perception of the witness and is helpful to a clear understanding of the testimony or the determination of a fact in issue.  The rule allows witnesses to testify about observations as well as inferences and opinions, including opinions about the speed of a car, the value of property, and identification of a person, when such testimony will be helpful to the jury.[26]

As discussed above, Schwahn expressed his opinion that the man pictured in the video was holding firearms.  This is permissible lay witness opinion testimony that is helpful to the jury in determining whether Buchanan committed first degree burglary, theft of firearms, and unlawful possession of

---

[23] Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101, 76 S. Ct. 158, 100 L. Ed. 83 (1955)).
[24] State v. Madison, 53 Wn. App. 754, 763, 770 P.2d 662 (1989).
[25] State v. Alvarado, 89 Wn. App. 543, 553, 949 P.2d 831 (1998).
[26] Ashley v. Hall, 138 Wn.2d 151, 155-56, 978 P.2d 1055 (1999).

firearms. Buchanan's counsel did not perform deficiently by failing to object to Schwahn's admissible testimony. Because Buchanan does not show deficient performance, we reject his ineffective assistance of counsel claim.

## Statutory Grounds for an Exceptional Mitigated Sentence

Next, Buchanan claims that he should be resentenced because the trial court declined to run his firearm-related sentences concurrently as an exceptional mitigated sentence only because it incorrectly believed it could not do so. We disagree.

The standard range sentence for multiple firearm-related convictions is consecutive sentences.[27] A sentencing court has discretion to impose an exceptional mitigated sentence in the form of concurrent sentences for multiple firearm-related convictions when consecutive sentences would result in a "presumptive sentence that is clearly excessive in light of the purpose of the [Sentencing Reform Act of 1981 (SRA)]."[28] Among other objectives, the SRA[29]

---

[27] RCW 9.94A.589(1)(c) states, "If an offender is convicted under RCW 9.41.040 for unlawful possession of a firearm in the first or second degree and for the felony crimes of theft of a firearm or possession of a stolen firearm, or both, [t]he offender shall serve consecutive sentences for each conviction of the felony crimes listed in this subsection 1(c), and for each firearm unlawfully possessed."

[28] RCW 9.94A.535(1)(g).

[29] Ch. 9.94A RCW.

seeks to "[e]nsure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history."[30]

A sentencing court must find that there are "substantial and compelling reasons justifying an exceptional sentence."[31] "A discretionary sentence within the standard range is reviewable in 'circumstances where the court has refused to exercise discretion at all or has relied on an impermissible basis for refusing to impose an exceptional sentence below the standard range.'"[32] A trial court relies on an impermissible basis when it "operates under the 'mistaken belief that it did not have the discretion to impose a mitigated exceptional sentence for which [a defendant] may have been eligible.'"[33] An appellate court must remand for resentencing when it is not confident that the sentencing court would have imposed the same sentence had it known an exceptional sentence was an option.[34]

Buchanan relies on State v. McFarland[35] to support remand in this case. In McFarland, our Supreme Court held that "[r]emand for resentencing [was]

---

[30] RCW 9.94A.010(1); State v. McFarland, 189 Wn.2d 47, 52, 399 P.3d 1106 (2017).
[31] RCW 9.94A.535.
[32] McFarland, 189 Wn.2d at 56 (internal quotation marks omitted) (quoting State v. McGill, 112 Wn. App. 95, 100, 47 P.3d 173 (2002)).
[33] McFarland, 189 Wn.2d at 56 (alteration in original) (quoting In re Pers. Restraint of Mulholland, 161 Wn.2d 322, 333, 166 P.3d 677 (2007)).
[34] Mulholland, 161 Wn.2d at 334; see also McGill, 112 Wn. App. at 99.
[35] 189 Wn.2d 47, 399 P.3d 1106 (2017).

warranted" because the sentencing court did not understand its discretion to impose concurrent sentences for McFarland's firearm-related offenses.[36] The court explained that although the sentencing court imposed a sentence at the bottom of the standard range, it "indicated some discomfort with [its] apparent lack of discretion and even commented that McFarland's standard range sentence was equivalent to that imposed for second degree murder."[37]

Here, Buchanan claims that the sentencing court mistakenly believed that statutory constraints prevented it from considering an exceptional mitigated sentence. At sentencing, Buchanan's trial counsel asked that the court consider an exceptional mitigated sentence below the standard range and, if the court decided against a mitigated sentence, that it impose a low-end sentence. Buchanan's counsel stated that the range for Buchanan's firearm-related offenses was higher than many other criminal offenses involving homicide or manslaughter. His counsel asserted that this range was disproportionate to the seriousness of these offenses and thus excessive in light of the purpose of the SRA to punish offenses proportionate to the seriousness of the offense.

When sentencing Buchanan, the court noted that "the firearm offenses are required by law to run consecutive to each other and concurrent to all other charges." As discussed above, this is, in fact, what RCW 9.94A.589(1)(c)

---

[36] McFarland, 189 Wn.2d at 58-59.
[37] McFarland, 189 Wn.2d at 51, 58-59.

-11-

requires. But because it is unclear whether the court understood that it could impose an exceptional mitigated sentence, we decide whether the record makes clear that the court would have imposed the same sentence had it known that an exceptional mitigated sentence was available. The court explained why it chose to impose a midrange sentence of 124 months rather than a low-end sentence of 106 months:

> I am going to tell you why I am sentencing you in the manner that I am sentencing you. It's been argued by the Prosecutor that I should go to the high end of the range in sentencing you. It's been argued by your attorney I should go to the low end of the range, possibly even exceptionally in sentencing you.
>
> It seems to me that in returning to the same location to further victimize the Divitas that shows a certain degree of callous indifference to their rights and the impact that invading their property, their lives, their memories; that that callous indifference to their rights argues that I should be sentencing you right in the midrange of these particular crimes.

Unlike the sentencing court in McFarland, here, the court decided against imposing a low-end standard range sentence and imposed a midrange sentence. The court explained that Buchanan's "callous indifference" to the Divitas' rights warranted a longer sentence. Because the court rejected Buchanan's request for a low-end standard range sentence due to his attitude, Buchanan does not show prejudice, and his claim fails.

Ineffective Assistance of Counsel

Buchanan makes another ineffective assistance of counsel claim based on his trial counsel's failure to argue that several of his convictions constituted the same criminal conduct under the SRA. We disagree.

As discussed above, ineffective assistance of counsel requires that the defendant show (1) counsel's performance was deficient and (2) counsel's deficient performance prejudiced the defense to the extent that it denied the defendant a fair trial.[38] Defense counsel's failure to argue same criminal conduct when the argument is relevant can constitute ineffective assistance.[39]

RCW 9.94A.589(1)(a) states, "Except as provided in (b), (c), or (d) of this subsection," when a trial court sentences a defendant for two or more current offenses, it determines the sentence range for each current offense by treating all current convictions as if they were prior convictions so as to include a defendant's current offenses in his offender score. But if the court finds that some or all of a defendant's current offenses constitute the "same criminal conduct,"[40] it must count those offenses as one crime when calculating the defendant's offender score.[41]

---

[38] Strickland, 466 U.S. at 687.
[39] State v. Saunders, 120 Wn. App. 800, 824-25, 86 P.3d 232 (2004).
[40] "'Same criminal conduct' . . . means two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim." RCW 9.94A.589(1)(a).
[41] RCW 9.94A.589(1)(a).

-13-

The exception clause in RCW 9.94A.589(1)(a) makes the same-criminal-conduct analysis described in 1(a) inapplicable to subsections (b), (c), or (d). RCW 9.94A.589(1)(c) provides an exception for firearm-related offenses:

> If an offender is convicted under RCW 9.41.040 for unlawful possession of a firearm in the first or second degree and for the felony crimes of theft of a firearm or possession of a stolen firearm, or both, the standard sentence range for each of these current offenses shall be determined by using all other current and prior convictions, except other current convictions for the felony crimes listed in this subsection (1)(c), as if they were prior convictions.

Thus, when a defendant like Buchanan is convicted of unlawful possession of a firearm in the second degree and theft of a firearm, the sentencing court does not perform the same-criminal-conduct analysis under RCW 9.94A.589(1)(a). Instead, it does not score the defendant's current convictions for those firearm-related offenses when calculating his offender score specifically for those same offenses.

First, Buchanan claims that his trial counsel performed deficiently because his counsel failed to argue that his two convictions for unlawful possession of a firearm in the second degree and his two convictions for theft of a firearm constituted the same criminal conduct. To support this claim, he relies on State v. Murphy.[42] There, Division Two of this court concluded that burglary, unlawful possession of a firearm, and theft of a firearm all constituted the same criminal

_____

[42] 98 Wn. App. 42, 50-51, 988 P.2d 1018 (1999).

-14-

conduct. But, in Murphy, the court examined a former version of the statute that the legislature amended, in relevant part, in 1999 to include an exception that was substantively identical to the current version of RCW 9.94A.589(1)(c) cited above.[43]

Here, Buchanan's two convictions for unlawful possession of a firearm in the second degree and theft of a firearm qualify under RCW 9.94A.589(1)(c). This provision requires only that the sentencing court not count those convictions toward Buchanan's offender scores for his firearm-related convictions. If the sentencing court had considered whether any of Buchanan's offenses qualified as the same criminal conduct under RCW 9.94A.589(1)(a), it would not have considered these four convictions in its determination. Thus, Buchanan's counsel's performance did not fall below an objective standard of reasonableness because his counsel did not argue at sentencing that the court should apply an inapplicable statutory provision.

Second, Buchanan claims that his trial counsel provided ineffective assistance because his counsel did not assert that his conviction for first degree burglary was the same criminal conduct as his convictions for unlawful possession of a firearm and theft of a firearm. But the burglary antimerger statute states, "Every person who, in the commission of a burglary shall commit

---

[43] Murphy, 98 Wn. App. at 50-51 (examining former RCW 9.94A.400(1)(a) (1996)).

any other crime, may be punished therefor as well as for the burglary, and may be prosecuted for each crime separately."[44] In State v. Lessley,[45] this court affirmed the trial court's determination that the defendant's convictions for kidnaping and burglary did not qualify as the same criminal conduct. We reasoned that the antimerger statute provides the sentencing judge with the discretion to exempt burglary from the same-criminal-conduct analysis.

Buchanan contends that his trial counsel performed deficiently because his counsel failed to tell the trial court about the discretion it had. But Buchanan provides no authority to support the proposition that it is counsel's responsibility to inform the trial court of its discretion to apply the antimerger statute or that counsel performs deficiently when he does not do so. When a party does not support its assertions with authority, a reviewing court assumes that it has found none.[46] Buchanan does not meet his burden of proving ineffective assistance.

### Jury Demand Fee

Last, Buchanan claims that the trial court erred in imposing the $250 jury demand fee because it did so based on the incorrect belief that it was a mandatory fee rather than a discretionary fee. Buchanan did not challenge the

---

[44] RCW 9A.52.050.
[45] 59 Wn. App. 461, 463, 467, 798 P.2d 302 (1990).
[46] State v. Lord, 117 Wn.2d 829, 853, 822 P.2d 177 (1991).

imposition of the jury demand fee at his sentencing hearing.[47] In State v. Blazina,[48] our Supreme Court held that RAP 2.5(a) grants appellate courts discretion whether to review a defendant's challenge to his legal financial obligations that he raises for the first time on appeal. We exercise our discretion and decline to review this challenge.

CONCLUSION

Buchanan does not show that Schwahn provided improper opinion testimony on guilt, meet his burden on either of his ineffective assistance of counsel claims, or show prejudice on the exceptional mitigated sentence issue. We affirm.

_Leach, J._

WE CONCUR:

---

[47] Although Buchanan's counsel asked "the Court to waive any fines and fees, costs, which the Court is able to do," he did not object after the trial court imposed the fees.

[48] 182 Wn.2d 827, 832-35, 344 P.3d 680 (2015).